# 22-1835

## United States Court of Appeals
## for the Second Circuit

---

JOSEPH DIAZ,

*Petitioner-Appellant,*

*v.*

MARK MILLER, SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY,

*Respondent-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT

## JOINT APPENDIX: VOLUME II OF II

Robert S. Dean
Center for Appellate Litigation
*Counsel for Petitioner-Appellant*
120 Wall Street, 28th Floor
New York, NY 10005
212-577-2523

Katharine Skolnick
(NY Bar #4760914)
kskolnick@cfal.org
*Of Counsel*
212-577-2523 (ext. 501)

November 18, 2022

# TABLE OF CONTENTS

Appellate Division Decision……………………………………………JA2-1

Appellant's Supplemental Application for Leave to Court of Appeals…………..JA2-5

Respondent's Response…………………………………………..JA2-20

Order Denying Leave……………………………………………JA2-25

Crime Scene Report………………………………………....JA2-26

Det. Brown's Crime Scene Diagram………………………………...JA2-70

Det. Jacklitsch's Crime Scene Diagram………………………………...JA2-71

Friedman, J.P., Gische, Kapnick, Kahn, Gesmer, JJ.

4226    The People of the State of New York,    Ind. 3971/09
                        Respondent,

                -against-

        Joseph Diaz,
            Defendant-Appellant.
        _____

Robert S. Dean, Center for Appellate Litigation, New York (Rachel
T. Goldberg of counsel), for appellant.

Darcel D. Clark, District Attorney, Bronx (Marianne Stracquadanio
of counsel), for respondent.
        _____

    Judgment, Supreme Court, Bronx County (Barbara F. Newman,

J.), rendered December 10, 2014, convicting defendant, after a

jury trial, of manslaughter in the first degree, and sentencing

him, as a second felony offender, to a term of 25 years,

unanimously affirmed.

    The verdict was not against the weight of the evidence (see

People v Danielson, 9 NY3d 342, 348-349 [2007]).  There is no

basis for disturbing the jury's determinations concerning

credibility and identification.  The evidence establishing that

defendant fatally shot a bystander during a gunfight included

reliable identifications by two eyewitnesses, evidence of motive,

and a surveillance videotape that, while not depicting the

shooting, tended to corroborate the People's theory of the case.

113

Although a third witness testified that the assailant was actually another man involved in the incident, the jury could have reasonably rejected her testimony.

The crime scene evidence that defendant claims was admitted in violation of his right of confrontation was not testimonial, since it "[did] not link the commission of the crime to a particular person" (*People v John*, 27 NY3d 294, 315 [2016]; *see also People v Freycinet*, 11 NY3d 38, 42 [2008]; *People v Acevedo*, 112 AD3d 454, 455 [1st Dept 2013], *lv denied* 23 NY3d 1017 [2014]). In any event, any error in admitting the crime scene report and diagrams prepared by a nontestifying officer was harmless under the standard for constitutional error (*see People v Crimmins*, 36 NY2d 230 [1975]), because evidence showing the locations where the officer found cartridge cases and other ballistic evidence shed little or no light on any of the disputed issues at trial, and there is no reasonable possibility that this evidence affected the verdict.

The court providently exercised its discretion in permitting a detective to give brief, limited testimony that he interviewed an alternative suspect in the shooting, and another witness, and that, based on the investigation, the alternative suspect was not arrested. This testimony completed the narrative and provided

114

the jury with relevant background information regarding the police investigation (*see People v Tosca*, 98 NY2d 660 [2002]). The detective did not reveal the content of these interviews, or convey any express or implied opinion that defendant was guilty. Furthermore, both the alternative suspect and the other witness testified at trial.

We find that defendant received effective assistance under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]). Defendant has not shown that counsel's single error, in accidentally permitting some inadmissible evidence to enter the case, deprived him of a fair trial or affected the outcome of the case.

By completely waiving all cross-examination of a witness who had asserted his Fifth Amendment privilege regarding some of the prosecutor's questions on direct examination, defendant waived, or failed to preserve, his claim that his right to cross-examine this witness was unconstitutionally limited by the witness's assertion of the privilege or by the court's prospective ruling on the permissible scope of cross-examination. We decline to review defendant's claim in the interest of justice. As an alternative holding, we also reject it on the merits. Since

115

there was not even an attempt at cross-examination, it is
impossible to determine whether the witness's anticipated
assertion of his right against self-incrimination would have
undermined the process to such a degree that meaningful
cross-examination within the intent of the Confrontation Clause
no longer existed (*see United States v Owens*, 484 US 554, 562
[1988]), and, if so, what remedy was necessary (*see People v
Vargas*, 88 NY2d 363, 380 [1996]).  Defendant has also not
established that he was prejudiced by the witness's invocation of
the privilege on direct examination.  In any event, the testimony
of this witness was nonincriminating and cumulative, and there
was no reasonable possibility that it contributed to the
conviction.

We perceive no basis for reducing the sentence.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:  JUNE 8, 2017

CLERK

116

JA2-4

# CENTER FOR APPELLATE LITIGATION

### 120 WALL STREET – 28TH FLOOR, NEW YORK, NY 10005 TEL. (212) 577-2523 FAX 577-2535



*ATTORNEY-IN-CHARGE*
ROBERT S. DEAN
*ASSISTANT ATTORNEY-IN-CHARGE*
MARK W. ZENO
*SENIOR SUPERVISING ATTORNEYS*
ABIGAIL EVERETT
CLAUDIA S. TRUPP
BARBARA ZOLOT
*MANAGING ATTORNEY*
DAVID J. KLEM
*SUPERVISING ATTORNEY*
MARISA K. CABRERA
*ASSISTANT MANAGING ATTORNEY*
KATHARINE SKOLNICK

RACHEL T. GOLDBERG
*SENIOR APPELLATE COUNSEL*

rgoldberg@cfal.org
*extension* 529

July 24, 2017

Hon. Leslie E. Stein
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

Re: <u>People v. Joseph Diaz</u>
Criminal Leave Application

Your Honor:

On behalf of appellant, Joseph Diaz, I submit this letter in further support of his application for leave to appeal a judgment of Supreme Court, Bronx County, convicting him of first-degree manslaughter. I previously sent this Court a copy of the Appellate Division's opinion and copies of the briefs.[1]

This Court should grant leave to address two preserved issues of state-wide importance:

- Does the Confrontation Clause of the Sixth Amendment or the State Constitution apply to police-created crime reports if police have not yet identified a suspect in the crime?

---

[1] Your Honor extended Appellant's time to mail this follow-up leave letter from July 20, 2017 to July 24, 2017.

- Do police crime scene reports fall under the "business records" exception to the ban on hearsay evidence?

In addition to these questions (which are further detailed below), we ask that Your Honor review and consider all of the other claims raised in the appellate briefs which were previously provided to the Court.

## STATEMENT OF FACTS

### The Trial Evidence

Aisha Santiago was shot and killed outside of her apartment building at 3:20pm on September 22, 2009, the innocent victim of a gun battle that took place on East 146th Street in the Bronx.[2] The shootout was the culmination of rising tensions between Jason Irrizary—the nephew of "Red," a "loanshark" in the neighborhood—and Robert Vargas, the son of Barbara Lopez, a woman who owed Red money. The day of the shooting, Red brought Mr. Irrizary to the area to confront Ms. Lopez and her family. Mr. Irrizary's verbal threats soon escalated into a physical brawl in which Mr. Irrizary was slashed on the hand. He left to tend to his wound, but not before issuing a threat to "clear the fucking block because I'm coming back." And, 30 minutes later, he returned with a crew including his brother, stepbrother, and cousin.

None of the three bystander eyewitnesses saw the entire gun battle unfold, because they all ducked to protect themselves. However, they agreed that shots were first fired from Mr. Irrizary's crew, standing on the corner of Willis and East 146th Street, firing east. Mr. Ewell and Mr. Vargas stood in front of 409 146th Street, firing west. Ms. Santiago was standing in front of 445 East 146th Street, east of building 409, when she was killed by an errant bullet.

Other than agreeing on this vague outline of events, eyewitness recall varied. Bystander Orlando Soto testified that he saw someone with a large silver gun shooting east from the corner of Willis and 146th Street; he saw his friend Mr. Ewell shooting west from in front of 409 146th street and when he dropped to the ground he heard "lots of guns firing" from in front of building 409. Mr. Soto identified Mr. Diaz in a lineup as shooting from Willis Avenue, but could not identify him at trial.

Eyewitness Michael Jones testified in both the Grand Jury and at trial that he

---

[2] Unless otherwise noted, this statement of facts is based on the statement of facts in Appellant's Appellate Division Brief ("AB"). See AB 6-37. Appellant has also attached the specific transcript pages and exhibits referenced in this letter, including the transcript pages indicating preservation.

2

saw Mr. Diaz shoot a .9mm from the corner of Willis and 146th Street, and then heard, but did not see, 8 to 10 more shots during the gun battle.

Bystander Susanna Castro, who testified for the prosecution, identified Mr. Irrizarry as the person who was shooting east from the corner of Willis and 146th. She also testified that at least two other men from Mr. Irrizary's crew were holding guns. She was adamant that she did not see Mr. Diaz with a gun.

The medical examiner who performed Ms. Santiago's autopsy said that she could not determine what kind of bullet killed her. The examiner concluded that the person who fired the fatal shot could have been standing anywhere from 10 to over 100 feet away, but could not determine where he was standing or from what direction the bullet came (Tr. 798-803, 806).

Because Ms. Santiago died during a gun battle in which there were multiple shooters, and it was impossible to tell what kind of bullet struck her, the prosecutor had to rely on ballistics evidence collected by Crime Scene Unit Detective Glenn Jacklitsch to tie the fatal shot to someone in Mr. Irrizary's crew, and to Mr. Diaz specifically.

Detective Jacklitsch arrived two hours after the homicide to process the scene and collect evidence. He took 57 photos at the scene (Exhibits 1-56); created a crime scene report (Exhibit 57); and created a diagram of the crime scene that depicted the location of where he recovered each ballistics item (Exhibit 62). The photographs in Exhibits 1-57 depicted all of the evidence Detective Jacklitsch collected, and the crime scene report contained those same photographs in a thumbnail version, along with information about "how the photo was taken . . . the direction in which the photo was taken and the location in question, and the brief description of what the photo is" (Tr. 88). The crime scene report also included written descriptions of each piece of evidence, what Detective Jacklitsch believed it to be, and where he found it (see Exhibit 57). The diagram showed the location of where he found each of the 25 pieces of ballistics evidence, with measurements and small directional line markers leading to a numbered piece of evidence.

According to Detective Jacklitsch's reports, he recovered six casings discharged from a .45 caliber Winchester at the corner of Willis and 146th Street, which were designated as evidence numbers 1 through 6 on the diagram. Also according to his reports, Detective Jacklitsch recovered three discharged casings from a .9mm Luger in front of 409 East 146th Street, as well as two .22 casings.[3]

---

[3] For economy's sake, appellant will not detail all of the trial evidence related to each ballistics-related item that Detective Jacklitsch's recovered. Appellant urges your Honor to review

3

Detective Jacklitsch found a bullet impact mark in front of building 445, and a bullet hole in the trunk of a Nissan parked on the north side of 146th Street, in front of building 455, east of where Ms. Santiago was shot, and about two football fields away from the corner of Willis and 146th. There was a .45 slug inside the trunk. A lead fragment, deformed bullet, and bullet fragment were found in front of 409-411 East 146th Street, but these items were too small to analyze.

All of the information collected by Detective Jacklitsch and memorialized in his crime scene reports, photos, and crime scene diagram, was introduced at Mr. Diaz's trial on the prosecution's case-in-chief, and described in oral testimony for over 100 pages. However, Detective Jacklitsch himself did not testify, and was not cross-examined about any of it. According to the prosecutor, Detective Jacklitsch was "retired" at the time of Mr. Diaz's trial, so the prosecutor called Detective Paul Brown, also a member of the Crime Scene Unit, to testify in his stead.

Detective Brown had nothing to do with the investigation into Ms. Santiago's death until a few weeks before Mr. Diaz's trial. He said that "all of [the] information in this case c[a]me from Jacklitsch's reports" (Tr. 59-60, 125). Detective Brown had prepared for Mr. Diaz's trial by reviewing Detective Jacklitsch's notes and reports, and by speaking with the prosecutor (Tr. 64-65). He visited the crime scene three weeks before trial—five years after the crime—to get a "feel of the location" so he would "feel comfortable testifying" (Tr. 65-66, 70). He did not take any notes or photographs (Tr. 70).

Detective Brown also created a computerized "duplicate" of Jacklitsch's crime scene diagram for use at trial (Tr. 107). He used Detective Jacklitsch's diagram as the template for where to place all 25 pieces of evidence on his own diagram, including where the ballistics evidence was found (Tr. 122, 143). Detective Brown added a color-coded key to his diagram, listing the 25 pieces of evidence Detective Jacklitsch listed in his reports; the key added a "J" in front of each number to represent that Detective  Jacklitsch had collected the evidence.[4]

Defense counsel objected to the admission of the photographs, crime scene reports, and both Detective Jacklitch's diagram and Detective Brown's "duplicate" diagram on the grounds that they violated Diaz's Sixth Amendment right to

---

pages 114-206 of Detective Brown's testimony—which are enclosed—for the full scope of these descriptions.

[4] For example, in both Detective Jacklitsch's and Detective Brown's diagrams a cluster of numbers, 1 through 6, appear on the corner of Willis Avenue and 146th Street. In Detective Brown's diagram, these numbers appear in red. There is a key noting that "J1 thru J6"—highlighted with a red dot— are "Win[chester] .45 Auto D/S/Casings."

4

confrontation under <u>Crawford</u>. He argued that the documents were testimonial, and were being introduced to prove that Mr. Diaz was the shooter (Tr. 89-90, 92, 96-98, 104-05, 112-13). In addition, counsel argued, the documents were "technically hearsay", and did not fall under the business records exception because they were not required to be prepared in the normal course of business (P 93-96).

The court rejected counsel's arguments and allowed the documents into evidence (Tr. 96-98, 105, 112-13).

Detective Brown testified for over 100 transcript pages about the evidence Detective Jacklitsch collected, and the jurors were given a copy of Detective Brown's duplicate diagram to follow along during his testimony (Tr. 66-71, 87-88, 98-104, 106-28, 113-14, 137-68, 192-206). He provided information about each of the 57 photographs, explaining where he believed Detective Jacklitsch was standing when he took the photograph, what Detective Jacklitsch said it depicted, and where it could be found on his diagram. Detective Brown said repeatedly that he was relying entirely on Detective Jacklitsch's report for this information (Tr.122-23, 125).

Throughout the trial, all eyewitnesses referred to Detective Brown's diagram to illustrate their own locations during the incident.

On summation, the prosecutor acknowledged that this was not an "easy case," given that the eyewitnesses "saw things differently." He relied on ballistics evidence to theorize that Mr. Diaz stood on the northeast corner of Willis Avenue and 146th Street, shooting a .45 caliber gun east, towards Mr. Vargas's building at 409 146th Street. Mr. Vargas and Mr. Ewell shot back, facing west. The bullet that struck Ms. Santiago—who had been standing east of building 409—must have from Mr. Diaz's gun because Detective Jacklitsch had found a discharged .45 bullet east of Ms. Santiago. He repeatedly referenced the ballistics located on the crime scene diagram, arguing that the "crime scene evidence speaks for itself" (Tr. 947-50, 991).

### Verdict and Sentence

The jury asked for the crime scene diagram twice during their deliberations, after which they convicted Mr. Diaz of first-degree manslaughter. The court sentenced him to the maximum term of 25 years' imprisonment.

### Appellate Division

On appeal to the Appellate Division, First Department, Mr. Diaz renewed his contention that both crime scene diagrams, as well as the crime scene report and photographs, were testimonial and thus inadmissible without an opportunity to cross-examine Detective Jacklitsch. The Appellate Division rejected the merits of this argument solely on the ground that the evidence, on its own, was not tied to Mr.

5

Diaz: "The crime scene evidence that defendant claims was admitted in violation of his right of confrontation was not testimonial, since it '[did] not link the commission of the crime to a particular person' (People v. John, 27 N.Y.3d 294, 315 (2016); see also People v. Freycinet, 11 N.Y.3d 37, 42 (2008); People v. Acevedo, 112 A.D.3d 454, 455 (1st Dept. 2013), lv denied 23 N.Y.3d 1017 (2014)." 151 A.D.3d 502 (2017) (citations in original).

The Appellate Division also found the admission harmless in any event:

> Any error in admitting the crime scene report and diagrams prepared by a nontestifying officer was harmless under the standard for constitutional error, because evidence showing the locations where the officer found cartridge cases and other ballistic evidence shed little or no light on any of the disputed issues at trial, and there is no reasonable possibility that this evidence affected the verdict.

Id. (Citations ommitted)

Mr. Diaz also raised the preserved argument that the crime scene evidence constituted inadmissible hearsay, since it did not fall under the "business records" exception (AB 55 n.16; AB Reply 5). The Appellate Division did not address this issue in its decision in Mr. Diaz's case.

## REASONS LEAVE SHOULD BE GRANTED

Your Honor should grant leave in this case to clarify: (1) whether the Confrontation Clause of the Sixth Amendment or the State Constitution apply to police-created crime reports if police have not yet identified a suspect in the crime, and (2), whether police crime scene reports fall under the "business records" exception to the ban on hearsay evidence.

## I. Confrontation Clause Claim

A. Leave should be granted because the Appellate Division's decision contravenes clear and binding Supreme Court and Court of Appeals precedent suggesting that police crime-scene reports are categorically testimonial.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. "Witnesses" are those who give testimony. Accordingly, in Crawford v. Washington, 541 U.S. 36 (2004), the United

States Supreme Court described a "core class" of testimonial statements, including "pretrial statements that declarants would reasonably expect to be used prosecutorially;" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 51-52; accord, Davis v. Washington, 547 U.S. 813, 822 (2006) (statements are testimonial when "the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution.").

Based on this "core-class" of testimonial statements, the Supreme Court in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), explained that where the "sole purpose" of a document is evidentiary in nature, then the document is "functionally identical to live, in-court testimony" subject to cross-examination. Id. at 310-11. Therefore, it went on, police crime-scene reports are testimonial. The Court clarified that although "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status . . . that is not the case if the regularly conducted business activity is the production of evidence for use at trial." Id., at 321 (citation omitted). It continued:

> Our decision in Palmer v. Hoffman, 318 U.S. 109, (1943), made that distinction clear. There we held that an accident report provided by an employee of a railroad company did not qualify as a business record because, although kept in the regular course of the railroad's operations, it was calculated for use essentially in the court, not in the business. . . . [P]olice reports generated by law enforcement officials . . . do not qualify as business or public records for precisely the same reason."

Id. (Citation omitted).

Two years later, the Supreme Court in made it even more clear that crime scene reports and diagrams created as part of a criminal investigation are testimonial: "A document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial." Bullcoming v. New Mexico, 564 U.S. 647, 664 (2011). This rule reflects concerns about the "unique potential for abuse" arising from the "(i)nvolvement of government officers in the production of testimony." Crawford, 547 U.S. at 54 n. 7.

Under state law as well, if the statement's "primary purpose" is prosecution, then the statement is testimonial: "For our part, we have deemed the primary purpose test essential to determining whether particular evidence is testimonial hearsay requiring the declarant to be a live witness at trial." People v. John, 27 N.Y.3d 294,

307 (2016) (internal quotations and citations omitted). <u>People v. Rawlins</u>, 10 N.Y.3d 135 (2008), bears this out. In that case, the People urged the Court of Appeals to establish a blanket rule that business records admissible as an exception to the hearsay bar are never testimonial. The Court found that such a proposition would run afoul of the Confrontation Clause because it could also cover police records, which are testimonial. <u>Id.</u> at 449-150.

Measured by these principles, all of the documents and photographs prepared by Detective Jacklitsch, as well as the "duplicate" diagram copied by Detective Brown, unquestionably qualified as testimonial. The photos, report, and diagrams' "purpose," if not "sole purpose," was to codify evidence for use in the prosecution of a homicide, and they were created by police officers themselves with the expectation that they would serve as crucial evidence in a criminal case. Indeed, Detective Brown produced his duplicate diagram just a few weeks before Mr. Diaz's trial, with the sole purpose of using it at Mr. Diaz's trial. The purpose for the creation of the crime scene reports and diagrams was "gathering evidence of a past crime . . . [in order to] ultimately apprehend a perpetrator, and [the officer] had no other expectation" in collecting that evidence. <u>Rawlins</u>, 10 N.Y.3d at 157. They contained "the precise testimony [Jacklitsch] would be expected to provide if called at trial." <u>Melendez-Diaz</u>, 557 U.S. at 310, 316 (explicitly rejecting the logic that would render "a police officer's investigative report describing the crime scene admissible absent an opportunity to examine the officer").

This Court should take the opportunity to make a clear rule that, as Supreme Court and Court of Appeals precedent suggests, police-created crime scene reports are per-se testimonial. This clear rule makes sense, because police reports describing the crime scene are, by their very nature, formalized statements made by law enforcement for <u>no other purpose</u> than to establish facts to be used at a criminal trial. Police reports are in fact a paradigmatic example of the kind of "core class" of testimonial statements whose purpose 'is to establish or prove past events potentially relevant to later criminal prosecution." <u>Davis v. Washington</u>, 547 U.S. at 822.

By declaring as a rule that police-created reports made during the investigation of a crime are testimonial, this Court will create a workable, easy to follow rule that will ensure that lower courts do not run afoul of the state and federal constitutions, as the Appellate Division did in this case. Such a rule will also properly balance individual and state interests. While a defendant has a significant interest in confronting relevant police testimony, the State has no interest in precluding confrontation of an available witness. Thus, barring the confrontation right in cases like this reflects a "one-sided concept" of constitutional rights that this Court has previously rejected. <u>See</u> <u>Cooper v. Morin</u>, 49 N.Y.2d 69, 79 (1979).

**B. Alternatively, leave should be granted to clarify that a testimonial statement need not directly inculpate a known defendant.**

The First Department has created a rule that, unless evidence directly accuses a known defendant, that evidence cannot be testimonial. This is not the law in the State of New York, and should not become the law in the First Department.

This Court has repeatedly reiterated that the "primary purpose" of a statement is paramount in considering when a statement is testimonial, and has suggested several multi-factor test to help determine a statement's purpose. See, e.g., Pealer, 20 N.Y.3d at 453; Rawlins, 10 NY3d at 156; Freycinet, 11 N.Y. 3d at 38; John, 27 N.Y. at 307. The First Department utterly failed to consider the "primary purpose" test, and instead relied on this Court's dicta in a forensic-expert case to find that the contested evidence was not testimonial solely because it "[did] not link the commission of the crime to a particular person.'" Diaz, 151 A.D.3d 502 (citing John, 27 N.Y.3d at 315).

This Court should grant leave in this case to clarify that a statement does not have to be directly accusatory in order to be testimonial. Such a rule would be in line with Supreme Court precedent and this Court's own jurisprudence.

In Rawlins, this Court found that DNA rape-kit results were not testimonial because they "were not directly accusatory, in the sense that they explicitly linked the defendant to the crime." 10 N.Y.3d at 156, 160. This Court went on to clarify in dicta that "undoubtedly, statements can often be testimonial where their tendency to inculpate the defendant is only indirect. In close cases, the directness with which a particular statement points to the defendant as the offender is a factor to be considered." Id. at 156.

While this cautionary note has not been abrogated, it has not been mentioned by this Court again, leaving the "directly accusatory" factor ripe for misinterpretation. For example, in People v. Freycinet, the Court of Appeals found an autopsy report nontestimonial by examining four critical factors initially articulated in Rawlins, including "whether the report's contents are 'directly accusatory' in the sense that they explicitly link the defendant to the crime." 11 N.Y.3d at 41(quoting Rawlins, 10 N.Y.3d at 149-150, 153, 154). The last line of the majority's decision in People v. John also references this "directly accusatory factor", noting that the Court is "not retreating from our prior decisions holding that, given the primary purpose of a medical examiner in conducting autopsies, such redacted reports—'a contemporaneous, objective account of observable facts that [do] not link the commission of the crime to a particular person'—are not testimonial." John, 27 N.Y.3d at 315 (quoting Pealer, 20 N.Y.3d at 454; Freycinet, 11 N.Y.3d 38).

9

Thus, nothing in this Court's jurisprudence suggests that this "directly accusatory" factor must name the defendant, or link him to the crime in a direct way. Troublingly, the Appellate Division has nonetheless selectively cited to portions of John and Freycinet to find that a statement only requires confrontation if it is directly linked to a known defendant. The First Department has now created a law that will sow confusion among lower courts and other Departments on an important constitutional issue.[5] This Court has not directly examined the relevancy of Rawlins's dicta since it was first articulated nearly 10 years ago, and, given the First Department's decision, this case presents the opportunity for this Court to do so.

Notably, the Supreme Court has never found that a statement is testimonial only if it links to a known defendant, either. "Where that test comes from is anyone's guess." Williams, 231 S. Ct. at 2273-74 (Kagan, J., plurality) (citations omitted); accord id. at 2262-63 (Thomas, J., concurring). Indeed, the Melendez-Diaz majority, and five Justices in Williams, expressly rejected this "accusation" standard. Williams, 132 S. Ct. at 2273 (Kagan, J., plurality) (citations omitted); accord id at 2262-63 (Thomas, J., concurring); Melendez-Diaz, 557 U.S. at 313 (rejecting the argument that the documents are not testimonial because they "do not directly accuse petitioner of wrongdoing [because] their testimony is inculpatory only when taken together with other evidence linking petitioner to the contraband. This finds no support in the text of the Sixth Amendment or in our case law.").

The direct-accusation standard seized on by the First Department limits the Sixth Amendment to cross-examination of testimony proving that the defendant is the person who committed the offense. But, of course, a defendant has the right to cross-examine "witnesses" regarding all relevant facts, not just those bearing on "identity." See Melendez-Diaz, 557 U.S. at 313-14; U.S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"). Melendez-Diaz further confirmed that an identity limitation "would be contrary to longstanding case law," as the Supreme Court had previously held that the Confrontation Clause applies to non-identity evidence. Id. at 314 (explaining that in Kirby v. Unites States, 174 U.S. 47 (1899), the Supreme Court held that although the records proved "only that the property was stolen, and not that [defendant] received it . . . admission of the records violated [defendant's] rights under the Confrontation clasue").

---

[5] The Appellate Division has committed the same error in at least two other cases since this Court decided John: People v. Garlick, 144 A.D.3d 605 (2016) (finding an autopsy report non-testimonial only because the report did "'not link the commission of the crime to a particular person'") (citing John, 27 N.Y.3d at 315) and People v. Richardson, 147 A.D.3d 577, 582 (2017) (same).

10

This issue is important for High Court review because the dictum seized on and misinterpreted by the Appellate Division suggests that the Confrontation Clause is limited to "subjective" claims that "link the commission of a crime to a particular person," John 27 N.Y.3d at 315. That analysis squarely violates the Confrontation Clause under Melendez-Diaz, Bullcoming, and the views of five justices in Williams, as well this Court's decision in Rawlins, which has not been overruled. Thus, it cannot be the law of New York.

## II. Business Record Exception Claim

This Court has never explicitly ruled whether police reports and other crime-scene evidence created for the purpose of prosecution fall under the business records exception to the hearsay rule. This case presents the opportunity to do so.

It is beyond doubt that under federal law, crime scene reports and diagrams like the ones at issue here are not business records. See Federal Rule 803(8) (defining public records as "excluding . . . in criminal cases matters observed by police officers and other law enforcement personnel"); Melendez-Diaz, 557 U.S. at 321-22 (documents inadmissable "if the regularly conducted business activity is the production of evidence for use at trial. . . . [such as] police reports generated by law enforcement officials"); see also Palmer v. Hoffman, 318 U.S. 109, 114 (1943).

Under state law, however, "law enforcement agencies constitute businesses for purposes of the rule." People v. Guidice, 83 N.Y.2d 630, 635 (1994). In New York, "records prepared solely for the purpose of litigation should be excluded" from the business records exception. People v. Foster, 27 N.Y.2d 47, 52 (1970) (emphasis added). As long as "there are other business reasons which require the records to be made" Foster, 27 N.Y.2d at 52, the records may be admitted at trial.

This Court has only rarely examined whether and what type of police records should qualify for this exception. In People v. Foster, this Court found that police records examining the accuracy of a speedometer were admissible as business records because they were made at regularly schedule intervals, and "merely memorial[ized] the fact that the tests were made and what the results were." Id. at 52. Twenty four years later, in People v. Guidice, 83 N.Y.2d 630 (1994), this Court found that "linesheet entries"—in which police monitoring phone calls via electronic surveillance made an entry each time a phone call was made—are admissible under the business records exception because the linesheets "served an administrative function in the daily conduct of a police surveillance operation; they were required to be made by a court order; their purpose was to maintain an inventory of the tapes . . . and they were included in the progress reports that were filed regularly with the Judge supervising the wiretap order." Id. at 635.

This Court has never opined on whether police records created during a criminal investigation, and which are specific to that investigation, are admissible as business records. Reviewing this evidentiary issue is especially critical in light of its inextricible link to the constitutional confrontation analysis. See, e.g., Rawlins, 10 N.Y.3d at 149 (rejecting the People's argument that business records are never testimonial because such proposition "could run afoul of either our Federal or State Constitutions[' confrontation clause], and most especially in certain types of police business records").

Ruling that police records created during a criminal investigation do not qualify as business records would ensure clarity to the lower courts who, like the New York Supreme Court in this case, erroneously believe that there is "no doubt" that crime scene reports fall under the business record exception to the hearsay rule (Tr. 95-96). Creating such a rule would also provide an easily applicable threshold question that will help lower courts avoid wading through the "shambles" of federal Confrontation Clause jurisprudence. Michigan v. Bryant, 562 U.S. 44, 380 (2011).

## III. The Error Was Not Harmless

The Appellate Division was wrong to find here that the crime scene reports and diagrams admitted into evidence were not harmless because they "shed little or no light on any of the disputed issues at trial." 151 A.D.3d 502. To the contrary, the ballistics evidence was crucial to the case, because the medical examiner could not determine what type of bullet killed Ms. Santiago, how far away the shooter was standing, or what direction the shot came from. Moreover, the eyewitnesses did not provide clarity on what kinds of guns the shooters were firing during the gun battle. Therefore, making claims about the location of the shooter, and what kind of gun he fired, was critical to the People's case—and came only from the crime scene reports and diagrams, and the one-hundred pages of testimony about those documents.

The prosecutor argued that the fatal shot must have come from a person standing on the northeast corner of Willis Avenue and 146th Street, since, according to Detective Jacklitsch's crime scene reports, the .45 expelled casings were found at that corner. According to Detective Jacklitsch, deformed jackets from two .45 caliber bullets were found east of that corner in front of building 409, and a .45 bullet was found in the car at the far east end of 146th Street. The People claimed that because Mr. Diaz was shooting from that corner, he was the only person who could have fired the fatal shot. This crucial evidence about the location of the ballistics came solely and directly from the improperly admitted evidence.

The prosecution used the crime scene reports and diagrams to crystalize a narrative that eyewitness accounts left incoherent and contradictory. For instance,

12

Michael Jones testified that the person standing at the corner of Willis and 146th Street was shooting a .9mm, but this evidence was contradicted by the crime scene diagram and crime scene reports, which suggested someone at that corner person was shooting a .45—which supported the prosecutor's theory that someone from Mr. Irrizary's crew fired the fatal shot. Susannah Castro testified that at least three people from Mr. Irrizary's crew may have been shooting east, but the prosecutor used the crime scene evidence to argue that Mr. Diaz was the sole shooter from that corner. All of the eyewitnesses testified that there were at least three shooters total, and none of the eyewitnesses saw the entirety of the gun battle. Only the crime scene reports and diagrams filled the evidentiary gap that allowed the prosecutor to argue that, because a .45 bullet was found east of Ms. Santiago and because ballistics suggested that the two other shooters were shooting west using a .9mm and .22 mm weapons, someone from Mr. Irrizarry's crew fired the fatal shot.

Even where two of the five eyewitnesses identified Mr. Diaz as shooting the gun, the crucial question in this case—in which Mr. Diaz was not accused as an accomplice but as actually shooting the fatal shot during a multi-person gun battle—was which bullet killed Ms. Santiago. This information came exclusively and entirely from the crime scene reports and diagram. Yet Mr. Diaz was denied the right to cross-examine their creator.

The jury was keyed into the importance of this evidence as well. In their first note, they asked to review the crime scene diagram. Later in their deliberations, they asked to view the surveillance video; after they watched the surveillance footage, they asked to view it again, but this time with the crime scene diagram. Clearly, then, the diagram played a role in their deliberations.

In light of the dynamics at play in this case, the crime scene reports, and the diagrams of where Detective Jacklitsch found the ballistics evidence in particular, played an important role in the jury's assessment of who killed Ms. Santiago. Had Mr. Diaz's confrontation rights been honored, he could have challenged the report's reliability by asking Detective Jacklitsch, among other things:

- the specific steps he used to collect the ballistics evidence
- whether anybody helped him collect and measure the location of the ballistics evidence
- what equipment he or someone else used to measure the relative locations of the ballistics evidence
- whether he moved any of the evidence before photographing or measuring it
- how he knew whether the instruments he used were accurate
- the steps he took when translating his written field notes into a typed reports
- whether there were any differences between his initial, hand-drawn draft and

13

the final report
- whether and how he made contemporaneous notes about the location of the ballistics, or whether he relied on his memory
- whether he edited his photographs
- whether he was overworked at the time of the reports' preparation
- whether he omitted any information from the reports or diagram

The Confrontation Clause required the court to allow Mr. Diaz to ask these important questions about critical evidence before incarcerating him for 25 years. See Bullcoming, 564 U.S. 647; Melendez-Diaz, 558 U.S. 305.

## Court of Appeals Jurisdiction

These issues present two preserved questions of law within the Court of Appeals's jurisdiction. Counsel specifically and repeatedly objected to the introduction of the photos, the crime scene report, and the two diagrams (Exhibits 1-57 and 62) on Crawford grounds (Tr. 89-90, 92-93, 104-05, 112-13). He argued that, because he was unable to question Detective Jacklitsch, he was "denied my right, Crawford right to confrontation of the individual who was there and took those photographs, made those measurements and he's not here" (Tr. 89, 92). He argued that these exhibits were "testimonial" statements central to the prosecutor's case, because they were specifically being introduced to prove that "it was my client who committed the crime" (Tr. 96). He noted that bullet trajectory was critical to the case, and that by not being able to probe about "exact measurements" the court was "denying me the right to render a viable defense to this case to say this couldn't have possibly happened" (Tr. 90). By being "denied the right to cross-examine the crime scene investigator who drew up all of these documents, and who wrote it down and who did the measurements and everything else," Mr. Diaz's right of confrontation was abridged (Tr. 89-90, 93).

Counsel also specifically objected to the introduction of the evidence on evidentiary grounds, arguing that they were "technically really hearsay" and "a business record that was not required to be prepared" (Tr. 93, 94-95 105, 112-13).

The court recognized counsel's objections on Crawford and hearsay grounds, and ruled against counsel, preserving the issue for review (Tr. 91, 95-96, 112-13). See C.P.L. § 470.05.

On appeal, the People did not contest that either the constitutional confrontation claim or the evidentiary issue were preserved, and the Appellate Division addressed the merits of the confrontation claim on appeal.

14

## **CONCLUSION**

For the reasons stated above as well as for the reasons stated in the briefs Appellant submitted to the Appellate Division—including all the State and Federal constitutional issues contained therein—Appellant respectfully requests that Your Honor grant leave to appeal in this case. Should Your Honor wish any further submissions on this application, or wish to hold a leave conference, please do not hesitate to contact me.

Sincerely,

Rachel T. Goldberg
Senior Appellate Counsel
(212) 577-2523 ext. 529

CC: ADA Marianne Stracquadanio, Esq.
Bronx County District Attorney's Office
(without enclosures)

Encl: Cited portions of the record, Jury notes, and People's Trial Exhibits 57, 58 and 62



# OFFICE OF THE DISTRICT ATTORNEY, Bronx County

| | | |
|---|---|---|
| **Darcel D. Clark**<br>*District Attorney* | **198 East 161st Street**<br>**Bronx, NY 10451** | **Phone 718-838-7129**<br>**Fax    718-590-6523** |

August 15, 2017

Hon. Leslie E. Stein
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

Re:   <u>People v. Joseph Diaz</u>
Bronx Cty. Ind. No.: 3971/2009
Opposition to Leave Application

Your Honor:

  I am writing in opposition to defendant's application, dated July 17, 2017, and July 24, 2017, seeking leave to appeal the unanimous affirmance of his conviction. <u>People v. Diaz</u>, 151 A.D.3d 502 (1st Dept. 2017). In his current application, defendant seeks Court of Appeals review only of two issues: (1) whether his Confrontation rights were violated by the admission of a crime scene report; and, (2) whether crime scene reports fall under the "business records" exception to the hearsay rule. It is respectfully submitted that, for the following reasons, leave should be denied.[1]

  On September 22, 2009, defendant shot and killed Aisha Santiago, an innocent bystander to a neighborhood dispute. Defendant and his friends, Jason Irrizary and Anthony Pena, made good on a promise to redress wrongs committed against Irrizary's loan shark aunt, "Red;" Red had lent money to Barbara Lopez, which was not repaid. On the date of the shooting, Irrizary walked to Lopez's residence and took part in a "scuffle" with someone whom he believed to be Lopez's nephew. As Irrizary was leaving after the scuffle, he warned everyone to "clear the block" because he would be coming back. Irrizary returned with Pena and defendant, who possessed a .45 mm caliber semiautomatic pistol. After they crossed the street, defendant fired his weapon from the corner of Willis Avenue eastbound, in the direction of Lopez's

---

[1] Your Honor extended Respondent's time, upon Appellant's consent, to mail this opposition letter from August 7, 2017 to August 16, 2017.

building, and towards her nephew and his friends. Defendant's shooting caused the death of Aisha Santiago, who was on her way to the Laundromat with her young son.

On September 23, 2009, NYPD officers obtained three surveillance videos, which depicted defendant hand his gun over to Irrizary as they ran away from the location of the shooting. Based on police officers' conversations with bystanders, defendant was named as a suspect. He was positively identified as the shooter by an eyewitness, Orlando Soto, in a lineup on September 23, 2009, leading to his arrest. Defendant was also positively identified as the shooter by a second eyewitness, Michael Jones, in a post-arrest lineup on April 29, 2010.

The Bronx County Grand Jury charged defendant with Second Degree Murder (Penal Law § 125.25[1] and [2]), First Degree Manslaughter (Penal Law § 125.20[1]), and Second Degree Criminal Possession of a Weapon (Penal Law § 265.03[1][b] and [3]).

A jury trial was conducted before the Honorable Barbara Newman and defendant was convicted of First Degree Manslaughter (Penal Law § 125.20). In a unanimous decision, the Appellate Division, First Department, affirmed the judgment. See Diaz, 151 A.D.3d at 502. Leave should not be granted in this case, because defendant fails to raise a question of law which is worthy of review by this Court.

Defendant's Confrontation Clause Claim

"[T]he basic objective of the Confrontation Clause is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial." Michigan v. Bryant, 562 U.S. 344, 358 (2011), quoted in People v. Pealer, 20 N.Y.3d at 447, 4 53 (2013). Essentially, testimonial statements may not be introduced against a defendant at trial to establish the truth of the matter asserted. Id. See Crawford v. Washington, 541 U.S. 36, 42 (2004). In this case, to the extent that the information contained within the crime scene report or diagrams could be construed as "statements," such statements were not testimonial, as "a statement will be treated as testimonial only if it was 'procured with a primary purpose of creating an out-of-court substitute for trial testimony.'" Pealer, 20 N.Y.3d at 453.

Recently, in People v. John, 27 N.Y.3d 294, 307 (2016), this Court adhered to this rationale, and explained that it had "deemed the primary purpose test essential to determining whether particular evidence is testimonial." This Court acknowledged that there is no "ironclad" definition of testimonial evidence, and noted that two

factors are of particular importance: "first, whether the statement was prepared in a manner resembling ex parte examination and second, whether the statement accuses defendant of criminal wrongdoing." Id. at 307.

In this case, the Confrontation Clause was not implicated by the admission of the crime scene report and diagrams, since the information contained therein did not constitute "statements" for Crawford purposes. Instead, these items were merely an inventory of the ballistics found at the scene, photographs of what they looked like, and a "bird's eye view" map of where they were located. Notably, the report states repeatedly that an "unknown perp shot victims," thereby showing that the perpetrator—i.e., the defendant—was unknown to the Crime Scene Unit. And, the diagrams indicate that they were "not to scale; for illustration use only" (see Exhibits 57, 58A, and 62, provided by appellate counsel), thereby showing that they were merely demonstrative tools.

When examining the diagram (Exhibits 58A and 62) next to the report (Exhibit 57), it is clear that the precise location of the ballistic evidence was not material to the People's case. Moreover, without the diagram, the "specific locations and measurements" sections of the report—the only sections of relevance, since they cite the location of the ballistics on the ground—are inconsequential, since a person is not able to discern the location of the evidence without a map. Along these lines, even if a bullet should have been placed one millimeter to the right or left on the diagram, the fact remains that the People's case focused on the theory that defendant was on the corner of Willis Avenue shooting eastbound towards a rival group, in the direction where Aisha happened to be standing. Therefore, defendant's suggestion that cross-examination would have helped the defense's case does not persuade, because the diagram nonetheless demonstrated the general vicinity of the evidence.

In any event, as argued below, the actions taken by the author of the report and diagrams in documenting the collection of the evidence, was mere information gathering and reporting, rather than the formation of a conclusion that pertained to defendant's involvement in the crime. Accordingly, there is nothing testimonial about the report and diagram, because the information contained therein was not a substitute for the testimony of a person who was accusing the defendant. In an analogous fashion, the crime scene report and diagrams are similar to autopsy reports, which are "concerned only with what happened to the victim, not with who killed [the victim]" See People v. Freycinet, 11 N.Y.3d 38, 42 (2008).

Critically, even if it were worthwhile for this Court to review the category of crime scene reports and diagrams to consider their testimonial nature, this case is not a good candidate for such review; here, the admission of these documents into

evidence was harmless. Absent the challenged report and diagrams, the jury would have nonetheless concluded that defendant caused the death of Aisha. There was no doubt that Aisha's shooter was shooting eastbound towards his opponents—to whom Irrizary had just warned should "clear the block" since he was coming back. Based on the eyewitnesses' testimony and the surveillance video of defendant's "hand-off" of his gun to Irrizary, there was no question that defendant was the shooter who was shooting eastbound.

Notably, the main theory of the defense was one of misidentification; the main defense at trial was that it was not defendant, but Irrizary who shot eastbound towards where Aisha was standing, and defense counsel even posited during summation that Irrizary and defendant looked similar. The crime scene report and diagram, therefore, had no effect on such a theory. Accordingly, there is no reason to believe that the jury's verdict would have been any different had these items been excluded. See People v. Rawlins, 10 N.Y.3d 136, 158 (2008)(Court finding that the error of introducing fingerprint reports without giving defendant the opportunity to confront the preparing officer was harmless).

## Crime Scene Reports and the Business Records Exception

Next, defendant argues that this Court should review whether "police reports and other crime scene evidence created for the purpose of prosecution fall under the business records exception to the hearsay rule." As a general matter, police crime scene reports and diagrams, like the ones created here by the Crime Scene Unit, are not "created for the purpose of prosecution." Often, the Crime Scene Unit will collect potential evidence, survey a scene, document its findings, and criminal prosecution cannot or does not ensue.

Nonetheless, this question is unpreserved. Below, defendant did not object to the admission of the report and diagrams on the ground that it did not constitute the business record exception to the hearsay rule. Rather, defendant accepted that it was a business record, and focused his objections entirely on the question of admissibility on Crawford grounds; in stating that the crime scene report was "technically really hearsay" (Tr. 93) or that the measurements therein were "testimonial in nature" (Tr. 96), counsel was speaking about the report in terms of the Confrontation Clause. Similarly, his assertion that the diagram was "a business record that was not required to be prepared…[which was] definitely in [his] opinion a Crawford issue" (Tr. 105) already anticipated that the diagram was just that—a business record. If defendant had truly sought to argue that these materials did not constitute business records, he should have raised precisely why he believed they did not constitute business records

so that the trial court could have had the opportunity to "expressly decide" it. <u>See</u> C.P.L. § 470.05(2).

Since defendant failed to make an objection in the trial court regarding this specific issue, it is unpreserved, and this Court should find that review would be fruitless. <u>See</u> <u>People v. Hawkins</u>, 11 N.Y.3d 484, 491 (2008)("[p]reservation—or, more precisely, the lack of preservation—frequently accounts for the disposition of criminal cases in this Court").

Therefore, it is respectfully requested that defendant's leave application be denied. If you require any further input in this matter, please do not hesitate to contact me at 718-838-7129.

Respectfully submitted,

/s/

Marianne Stracquadanio
Assistant District Attorney
Appeals Bureau

cc:     Rachel T. Goldberg, Esq.
        Attorney for Defendant-Appellant
        Center for Appellate Litigation
        120 Wall Street, 28th Floor
        New York, New York 10005

# State of New York
# Court of Appeals

BEFORE: LESLIE E. STEIN, Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

JOSEPH DIAZ,

Appellant.

**ORDER
DENYING
LEAVE**

Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law § 460.20 from an order in the above-captioned case;*

UPON the papers filed and due deliberation, it is

ORDERED that the application is denied.

Dated: August 24, 2017

at Albany, New York

*Associate Judge*

*Description of Order: Order of the Appellate Division, First Department, entered June 8, 2017, affirming a judgment of the Supreme Court, Bronx County, rendered December 10, 2014.



  **CRIME SCENE UNIT**
**CASE/RUN INFORMATION**

PEOPLE'S EXHIBIT

JA2-26

Case 22-1835, Document 32, 11/21/2022, 3423265, Page28 of 73

| Case 2009-6944 | UF61 | | Dispatch Date/Time 09/22/2009 16:25 | Case Title HOMICIDE |
|---|---|---|---|---|

| CSU Team |
|---|
| Lead CSU Investigator  899384 GLENN JACKLITSCH DT3 |
| POM THOMAS JACOB # 928522 CMD: 568 |

| REQUEST INFORMATION | | | |
|---|---|---|---|
| Date Received 09/22/2009 | | Time Received 16:25 | Received By 898743 LAWRENCE WALSH DT2 568 |
| Requestor 897095 ANGEL BURGOS DT2 263 | | Requesting Pct 040 | |

| SCENE INFORMATION | | | Walk In |
|---|---|---|---|
| Scene Phone 646-996-7024 | Location OUTDOOR | | |
| | | | Borough/City BRONX |
| Building 445 | Street EAST 146 STREET | | |
| Cross Street 1 WILLIS AVENUE | | Cross Street 2 BROOK AVENUE | |
| Intersection 1 | | Intersection 2 | |

| OCCURRENCE INFORMATION | | | Occurrence Time 15:30 |
|---|---|---|---|
| Crime Reported | Occurrence Date 09/22/2009 | | |
| | | | Borough BRONX |
| Building 445 | Street EAST 146 STREET | | |
| Cross Street 1 WILLIS AVENUE | | Cross Street 2 BROOK AVENUE | |
| Intersection 1 | | Intersection 2 | |

| Description |
|---|
| THE VICTIM WAS SHOT BY UNKNOWN PERSON(S) FOR REASONS AS YET TO BE DETERMINED. THE VICTIM WAS PRONOUNCED DOA AT THE SCENE BY EMS. |

| PERSONS INVOLVED | | | | | | |
|---|---|---|---|---|---|---|
| Role COMPLAINANT/ VICTIM | Name AISHA SANTIAGO | Sex FEMALE | Age 25 | Race | Condition DECEASED | Injured By GUN SHOTS |
| Location ON SCENE | | | Location Other | | | |

  **CRIME SCENE UNIT**
**CASE/RUN INFORMATION**

| Case | UF61 | Dispatch Date/Time | Case Title |
|------|------|--------------------|------------|
| 2009-6944 | | 09/22/2009 16:25 | HOMICIDE |

**EQUIPMENT**

| NOTIFICATIONS | | Dispatch Time |
|---------------|--------------------|---------------|
| | Dispatch Date | 16:25 |
| Dispatched By | 09/22/2009 | |
| 898743 LAWRENCE WALSH DT2 568 | | |

Case 22-1835, Document 32, 11/21/2022, 3423265, Page29 of 73

JA2-27

**Photo No:** 1
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** south sidewalk of East 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253705948697_DSC_4344.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 2
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** street of East 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253705962917_DSC_4345.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 3
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** north sidewalk of East 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253705970520_DSC_4346.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 4
**Photo Type:** MIDRANGE
**Camera Direction:** EAST
**Description:** north sidewalk of East 146 St towards c/v
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253705977750_DSC_4347.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 5
**Photo Type:** MIDRANGE
**Camera Direction:** EAST
**Description:** street of East 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253705985437_DSC_4348.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 6
**Photo Type:** MIDRANGE
**Camera Direction:** EAST
**Description:** south sidewalk of 146 street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706031695_DSC_4349.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 7
**Photo Type:** MIDRANGE
**Camera Direction:** EAST
**Description:** opposite 427 E 146 street south sidewalk
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706128081_DSC_4350.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 8
**Photo Type:** MIDRANGE
**Camera Direction:** EAST
**Description:** street of East 146 street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706137456_DSC_4351.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 9
**Photo Type:** MIDRANGE
**Camera Direction:** EAST
**Description:** north sidewalk f/o 429 East 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706146109_DSC_4352.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 10
**Photo Type:** OVERALL
**Camera Direction:** WEST
**Description:** north sidewalk showing c/v
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706154257_DSC_4353.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 11
**Photo Type:** OVERALL
**Camera Direction:** WEST
**Description:** street towards Willis Ave from 455 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706200294_DSC_4354.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 12
**Photo Type:** OVERALL
**Camera Direction:** WEST
**Description:** south sidewalk from 458 East 146 Street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706259648_DSC_4355.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 13
**Photo Type:** MIDRANGE
**Camera Direction:** NORTH
**Description:** f/o 445 east 146 street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706270131_DSC_4356.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 14
**Photo Type:** MIDRANGE
**Camera Direction:** WEST
**Description:** showing c/v f/o 445 east 146 street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706280693_DSC_4357.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 15
**Photo Type:** MIDRANGE
**Camera Direction:** NOT APPLICABLE
**Description:** overview of body c/v
**Examination Quality:** Unknown

**Person**
**Last Name:** SANTIAGO **First Name:** AISHA **Race:** WHITE HISPANIC **Sex:** FEMALE **DOB:** 03/23/1984 **Age:** 25

**Item**
**Voucher: Item No:** 0 Description



1253706288378_DSC_4358.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 16
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** bullet hole in undershirt
**Examination Quality:** Unknown

**Person**
**Last Name:** SANTIAGO **First Name:** AISHA **Race:** WHITE HISPANIC **Sex:** FEMALE **DOB:** 03/23/1984 **Age:** 25

**Item**
**Voucher: Item No:** 0 Description

1253706296050_DSC_4359.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 17
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** bullet hole
**Examination Quality:** Unknown

**Person**
**Last Name:** SANTIAGO **First Name:** AISHA **Race:** WHITE
HISPANIC **Sex:** FEMALE **DOB:** 03/23/1984 **Age:** 25

**Item**
**Voucher: Item No:** 0 **Description**

1253706302026_DSC_4360.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 18
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** bullet hole in tee-shirt
**Examination Quality:** Unknown

**Person**
**Last Name:** SANTIAGO **First Name:** AISHA **Race:** WHITE
HISPANIC **Sex:** FEMALE **DOB:** 03/23/1984 **Age:** 25

**Item**
**Voucher: Item No:** 0 **Description**



1253706309283_DSC_4361.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 19
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** c/v face
**Examination Quality:** Unknown

**Person**
**Last Name:** SANTIAGO **First Name:** AISHA **Race:** WHITE
HISPANIC **Sex:** FEMALE **DOB:** 03/23/1984 **Age:** 25

**Item**
**Voucher: Item No:** 0 **Description**

1253706314155_DSC_4362.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 20
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** bullet hole in back
**Examination Quality:** Unknown

**Person**
**Last Name:** SANTIAGO **First Name:** AISHA **Race:** WHITE
HISPANIC **Sex:** FEMALE **DOB:** 03/23/1984 **Age:** 25

**Item**
**Voucher: Item No:** 0 **Description**

1253706318829_DSC_4363.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 21
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** bullet hole in back of tee-shirt
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**

1253706326357_DSC_4364.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 22
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J1,J2,J3,J4,J5,J6 & J25 C/O Willis Ave under BMW
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706332297_DSC_4365.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 23
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J7,J8,J9 f/o 409 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706338092_DSC_4366.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 24
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J10 thru J15 f/o 409- 411 East 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**

1253706344929_DSC_4367.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 25
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J16,J17,J18 f/o 409 -411 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706350515_DSC_4368.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 26
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J17,J18 409 -411 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706356018_DSC_4369.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 27
**Photo Type:** OVERALL
**Camera Direction:** WEST
**Description:** J19, J20 inside of fence area f/o 413-415 E 146 Street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706361907_DSC_4370.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 28
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J21 street from 413 - 415 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706368602_DSC_4371.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 29
**Photo Type:** OVERALL
**Camera Direction:** NOT APPLICABLE
**Description:** Bullet hole in rear bumper of NY Pl # DYA 4471
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706374805_DSC_4372.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 30
**Photo Type:** OVERALL
**Camera Direction:**
**Description:** inside of trunk showing J 22 in trunk NY Pl # DYA 4471
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706381727_DSC_4373.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 31
**Photo Type:** CLOSEUP
**Camera Direction:**
**Description:** Bullet hole in rear bumper of NY Pl # DYA 4471
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706386770_DSC_4374.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 32
**Photo Type:** OVERALL
**Camera Direction:** EAST
**Description:** J23 front of 445 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706391228_DSC_4375.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 33
**Photo Type:** OVERALL
**Camera Direction:** NORTH
**Description:** of BIM #1 front of 445 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706398130_DSC_4376.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 34
**Photo Type:** CLOSEUP
**Camera Direction:** NORTH
**Description:** of BIM #1 front of 445 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706402853_DSC_4377.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 35
**Photo Type:** OVERALL
**Camera Direction:** WEST
**Description:** J24 in street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706407076_DSC_4378.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 36
**Photo Type:** OVERALL
**Camera Direction:** WEST
**Description:** additional
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706414388_DSC_4379.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 37
**Photo Type:** OVERALL
**Camera Direction:** NORTH
**Description:** red bandana in rear of 445 E 146 st in front of 3rd bench
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706419935_DSC_4380.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 38
**Photo Type:** OVERALL
**Camera Direction:** NORTH
**Description:** J26 red bandana in rear of 445 E 146 st in front of 3rd bench with number
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706425046_DSC_4381.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 39
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J1 45 auto DSC under vehicle
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706433415_DSC_4382.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 40
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J2 45 auto DSC rec on n sidewalk
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706439354_DSC_4383.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 41
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J3 45 auto DSC rec on street
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706446403_DSC_4384.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 42
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J4 45 auto DSC recovered on north sidewalk
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706453061_DSC_4385.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 43
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J5 45 auto DSC recovered under auto
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706458457_DSC_4386.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 44
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J6 45 auto DSC recovered under auto
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706464169_DSC_4387.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 45
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J7 9MM DSC rec behind fence 409-411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706470929_DSC_4388.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 46
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J8 9MM DSC rec on sidewalk f/o 409-411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706477168_DSC_4389.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 47
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J9 9MM DSC rec behind fence 409 - 411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706481954_DSC_4390.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 48
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J10 9MM DSC rec front of step 409 -411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706491967_DSC_4391.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 49
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J11 9MM DSC rec on 4th step 409-411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706497384_DSC_4392.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 50
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J12 9MM DSC rec on 4th step 409 -411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706504217_DSC_4393.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 51
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J13 bullet fragment rec on 5th step 409-411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706512335_DSC_4394.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 52
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J14 Bullet fragment rec on 5th step 409-411
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No: 0 Description**



1253706516256_DSC_4395.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 53
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J15 9MM DSC rec on 5th step f/o 409-411 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706522478_DSC_4396.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 54
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J16 lead fragment rec sidewalk f/o 409-411 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706526744_DSC_4397.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 55
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J17 deformed bullet rec inside of fence 409- 411 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706532454_DSC_4398.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 56
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J18 bullet fragment rec inside of fence 409- 411 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706537004_DSC_4399.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 57
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J19 Unknown DSC rec inside of fence 413-415 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706542469_DSC_4400.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 58
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J20 Unknown DSC rec sidewalk of 413-415 E 146 st
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706550371_DSC_4401.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 59
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J21 bullet fragment rec from 417 E 146 St
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706555884_DSC_4402.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

---

**Photo No:** 60
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J22 Deformed bullet inside of trunk of auto NY PI # DYA 4471
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1253706561117_DSC_4403.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 61
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** J23 yellow metal earing f/o 445 E 146 St on sidewalk
**Examination Quality:** Unknown

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 **Description**



1253706567679_DSC_4404.JPG

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

| Reporting Officer: | Rank DT3 | Name GLENN JACKLITSCH | | Tax Reg. No. 899384 | Command 568-CRIME SCENE UNIT |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 20091016 | Date of Next Review . | Name DONALD BURTON | Supv. Tax No. 880701 |

**Evidence**

| Unique ID No.<br>J1 THRU J6 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>.45 CAL |
|---|---|---|---|---|
| Unique Item Number<br>J1 | Item Description<br>WINCHESTER 45 AUTO B/C B/P | | | |

| Specific Locations + Measurements |
|---|
| C/O E146ST AND WILLIS AVE REC ON STREET ~E OF W CURB OF WILLIS AVE 21'10" ~S OF N CURB 1' 10" |

| Packaged In<br>PLASTIC BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |

| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other |
|---|---|---|

| Received From<br>CSU RECOVERED |
|---|

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>1 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>6 | Property Clerk Description<br>WINCHESTER 45 AUTO | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT VICTIMS |
|---|---|
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

**Evidence**

| Unique ID No.<br>J1 THRU J6 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>.45 CAL |
|---|---|---|---|---|
| Unique Item Number<br>J2 | Item Description<br>WINCHESTER 45 AUTO B/C B/P | | | |

| Specific Locations + Measurements |
|---|
| C/O E146ST AND WILLIS AVE REC ON SIDEWALK ~E OF W CURB OF WILLIS AVE 21'4" ~N OF N CURB 2' 5" |

| Packaged In<br>PLASTIC BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |

| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other |
|---|---|---|

| Received From<br>CSU RECOVERED |
|---|

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>1 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>6 | Property Clerk Description<br>WINCHESTER 45 AUTO | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT VICTIMS |
|---|---|
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

**Evidence**

| Unique ID No.<br>J1 THRU J6 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>.45 CAL |
|---|---|---|---|---|
| Unique Item Number | Item Description | | | |

| J3 | WINCHESTER 45 AUTO B/C B/P | | |
|---|---|---|---|

**Specific Locations + Measurements**
C/O E146ST AND WILLIS AVE REC ON STREET ~E OF W CURB OF WILLIS AVE 21'8" ~S OF N CURB 1"

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
|---|---|---|---|
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
| **Item Processed In Field**<br>Yes | **Process Type**<br>Applied Powder for Prints, | **If Other** | |

**Received From**
CSU RECOVERED

| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>1 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
|---|---|---|---|
| **Property Clerk Invoice Qty**<br>6 | **Property Clerk Description**<br>WINCHESTER 45 AUTO | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** |

| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | **Specific Reason**<br>UNKNOWN PERP SHOT VICTIMS |
|---|---|
| **Comparison Property Clerk Invoice No.** | **Comparison Property Clerk Item No.** |

**Evidence**

| **Unique ID No.**<br>J1 THRU J6 | **Item Type**<br>FIREARMS | **Probative Value**<br>PROBATIVE | **Caliber**<br>.45 CAL |
|---|---|---|---|
| **Unique Item Number**<br>J4 | **Item Description**<br>WINCHESTER 45 AUTO B/C B/P | | |

**Specific Locations + Measurements**
C/O E146ST AND WILLIS AVE REC ON SIDEWALK ~E OF W CURB OF WILLIS AVE 23'5" ~N OF N CURB 3' 1"

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
|---|---|---|---|
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
| **Item Processed In Field**<br>Yes | **Process Type**<br>Applied Powder for Prints, | **If Other** | |

**Received From**
CSU RECOVERED

| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>1 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
|---|---|---|---|
| **Property Clerk Invoice Qty**<br>6 | **Property Clerk Description**<br>WINCHESTER 45 AUTO | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** |

| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | **Specific Reason**<br>UNKNOWN PERP SHOT VICTIMS |
|---|---|
| **Comparison Property Clerk Invoice No.** | **Comparison Property Clerk Item No.** |

**Evidence**

| **Unique ID No.**<br>J1 THRU J6 | **Item Type**<br>FIREARMS | **Probative Value**<br>PROBATIVE | **Caliber**<br>.45 CAL |
|---|---|---|---|
| **Unique Item Number**<br>J5 | **Item Description**<br>WINCHESTER 45 AUTO B/C B/P | | |

**Specific Locations + Measurements**
C/O E146ST AND WILLIS AVE REC ON STREET ~E OF W CURB OF WILLIS AVE 25'2" ~S OF N CURB 7"

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
|---|---|---|---|

| Type of Bio Evid | If Other | | Bio Bag No. |
|---|---|---|---|
| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other | |

| Received From |
|---|
| CSU RECOVERED |

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>1 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>6 | Property Clerk Description<br>WINCHESTER 45 AUTO | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT VICTIMS |
|---|---|
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

| Evidence |
|---|

| Unique ID No.<br>J1 THRU J6 | Item Type<br>FIREARMS | Probative Value<br>PROBATIVE | Caliber<br>.45 CAL |
|---|---|---|---|
| Unique Item Number<br>J6 | Item Description<br>WINCHESTER 45 AUTO B/C B/P | | |

| Specific Locations + Measurements |
|---|
| C/O E146ST AND WILLIS AVE REC ON STREET ~E OF W CURB OF WILLIS AVE 25'8" ~S OF N CURB 3' 1" |

| Packaged In<br>PLASTIC BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |
| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other | |

| Received From |
|---|
| CSU RECOVERED |

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>1 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>6 | Property Clerk Description<br>WINCHESTER 45 AUTO | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT VICTIMS |
|---|---|
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

| Evidence |
|---|

| Unique ID No.<br>J7 THRU J12,J15 | Item Type<br>FIREARMS | Probative Value<br>PROBATIVE | Caliber<br>9MM |
|---|---|---|---|
| Unique Item Number<br>J10 | Item Description<br>9MM DSC LUGER WIN B/C W/P | | |

| Specific Locations + Measurements |
|---|
| RECOVERED IN FRONT OF 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 165' 7" ~N OF N SIDEWALK 8' 3" |

| Packaged In<br>PLASTIC BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |
| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other | |

| Received From |
|---|
| CSU RECOVERED |

| Property Clerk Invoice No. R068328 | CSU Voucher Name R068328 | Property Clerk Item No. 2 | Property Clerk Invoice Type INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty 7 | Property Clerk Description 9MM DSC | | |
| Cash Value .00 | Peddler Seal No. | | SEC/NARCO Envelope No. |
| Test Requested 06. Ballistics - microscopic comparison to a known test... | | Specific Reason UNKNOWN PERP SHOT C/V | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | |

**Evidence**

| Unique ID No. J7 THRU J12,J15 | Item Type FIREARMS | | Probative Value PROBATIVE | Caliber 9MM |
|---|---|---|---|---|
| Unique Item Number J11 | Item Description 9MM DSC LUGER WIN B/C W/P | | | |

Specific Locations + Measurements
RECOVERED ON 4TH STEP IN FRONT OF 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 168'10" ~N OF N SIDEWALK 11' 11"

| Packaged In PLASTIC BAG | If Other | | Finger Prints Recovered No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |
| Item Processed In Field Yes | Process Type Applied Powder for Prints, | If Other | |
| Received From CSU RECOVERED | | | |

| Property Clerk Invoice No. R068328 | CSU Voucher Name R068328 | Property Clerk Item No. 2 | Property Clerk Invoice Type INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty 7 | Property Clerk Description 9MM DSC | | |
| Cash Value .00 | Peddler Seal No. | | SEC/NARCO Envelope No. |
| Test Requested 06. Ballistics - microscopic comparison to a known test... | | Specific Reason UNKNOWN PERP SHOT C/V | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | |

**Evidence**

| Unique ID No. J7 THRU J12,J15 | Item Type FIREARMS | | Probative Value PROBATIVE | Caliber 9MM |
|---|---|---|---|---|
| Unique Item Number J12 | Item Description 9MM DSC LUGER WIN B/C W/P | | | |

Specific Locations + Measurements
RECOVERED ON 4TH STEP OF 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 166'10" ~N OF N SIDEWALK 11' 11"

| Packaged In PLASTIC BAG | If Other | | Finger Prints Recovered No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |
| Item Processed In Field Yes | Process Type Applied Powder for Prints, | If Other | |
| Received From CSU RECOVERED | | | |

| Property Clerk Invoice No. R068328 | CSU Voucher Name R068328 | Property Clerk Item No. 2 | Property Clerk Invoice Type INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty | Property Clerk Description | | |

| 7 | 9MM DSC | |
|---|---|---|

| Cash Value<br>.00 | Peddler Seal No. | SEC/NARCO Envelope No. |
|---|---|---|

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT C/V |
|---|---|

| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |
|---|---|

**Evidence**

| Unique ID No.<br>J7 THRU J12,J15 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>9MM |
|---|---|---|---|---|

| Unique Item Number<br>J15 | Item Description<br>9MM DSC LUGER WIN B/C W/P |
|---|---|

**Specific Locations + Measurements**
RECOVERED ON 5TH STEP F/O 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 166' ~N OF N SIDEWALK 13' 4"

| Packaged In<br>PLASTIC BAG | If Other | Finger Prints Recovered<br>No |
|---|---|---|

| Type of Bio Evid | If Other | Bio Bag No. |
|---|---|---|

| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other |
|---|---|---|

**Received From**
CSU RECOVERED

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>2 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|

| Property Clerk Invoice Qty<br>7 | Property Clerk Description<br>9MM DSC |
|---|---|

| Cash Value<br>.00 | Peddler Seal No. | SEC/NARCO Envelope No. |
|---|---|---|

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT C/V |
|---|---|

| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |
|---|---|

**Evidence**

| Unique ID No.<br>J7 THRU J12,J15 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>9MM |
|---|---|---|---|---|

| Unique Item Number<br>J7 | Item Description<br>9MM DSC LUGER WIN B/C W/P |
|---|---|

**Specific Locations + Measurements**
RECOVERED BEHIND FENCE AREA 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 157' 9" ~N OF N SIDEWALK 10' 2"

| Packaged In<br>PLASTIC BAG | If Other | Finger Prints Recovered<br>No |
|---|---|---|

| Type of Bio Evid | If Other | Bio Bag No. |
|---|---|---|

| Item Processed In Field<br>Yes | Process Type<br>Applied Powder for Prints, | If Other |
|---|---|---|

**Received From**
CSU RECOVERED

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>2 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|

| Property Clerk Invoice Qty<br>7 | Property Clerk Description<br>9MM DSC |
|---|---|

| Cash Value<br>.00 | Peddler Seal No. | SEC/NARCO Envelope No. |
|---|---|---|

| Test Requested | | Specific Reason | |
|---|---|---|---|
| 06. Ballistics - microscopic comparison to a known test... | | UNKNOWN PERP SHOT C/V | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | |

**Evidence**

| Unique ID No. | Item Type | | Probative Value | Caliber |
|---|---|---|---|---|
| J7 THRU J12,J15 | FIREARMS | | PROBATIVE | 9MM |
| Unique Item Number | Item Description | | | |
| J8 | 9MM DSC LUGER WIN B/C W/P | | | |

| Specific Locations + Measurements |
|---|
| RECOVERED ON SIDEWALK F/O 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 163'2" ~N OF N SIDEWALK 9' 2" |

| Packaged In | If Other | Finger Prints Recovered |
|---|---|---|
| PLASTIC BAG | | No |

| Type of Bio Evid | If Other | Bio Bag No. |
|---|---|---|
| | | |

| Item Processed In Field | Process Type | If Other | |
|---|---|---|---|
| Yes | Applied Powder for Prints, | | |

| Received From |
|---|
| CSU RECOVERED |

| Property Clerk Invoice No. | CSU Voucher Name | Property Clerk Item No. | Property Clerk Invoice Type |
|---|---|---|---|
| R068328 | R068328 | 2 | INVESTIGATORY |

| Property Clerk Invoice Qty | Property Clerk Description | |
|---|---|---|
| 7 | 9MM DSC | |

| Cash Value | Peddler Seal No. | SEC/NARCO Envelope No. |
|---|---|---|
| .00 | | |

| Test Requested | Specific Reason |
|---|---|
| 06. Ballistics - microscopic comparison to a known test... | UNKNOWN PERP SHOT C/V |
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

**Evidence**

| Unique ID No. | Item Type | | Probative Value | Caliber |
|---|---|---|---|---|
| J7 THRU J12,J15 | FIREARMS | | PROBATIVE | 9MM |
| Unique Item Number | Item Description | | | |
| J9 | 9MM DSC LUGER WIN B/C W/P | | | |

| Specific Locations + Measurements |
|---|
| RECOVERED BEHIND FENCE AREA 409-411 E 146 ST ~E OF W CURB OF WILLIS AVE 164' ~N OF N SIDEWALK 10' 6" |

| Packaged In | If Other | Finger Prints Recovered |
|---|---|---|
| PLASTIC BAG | | No |

| Type of Bio Evid | If Other | Bio Bag No. |
|---|---|---|
| | | |

| Item Processed In Field | Process Type | If Other | |
|---|---|---|---|
| Yes | Applied Powder for Prints, | | |

| Received From |
|---|
| CSU RECOVERED |

| Property Clerk Invoice No. | CSU Voucher Name | Property Clerk Item No. | Property Clerk Invoice Type |
|---|---|---|---|
| R068328 | R068328 | 2 | INVESTIGATORY |

| Property Clerk Invoice Qty | Property Clerk Description | |
|---|---|---|
| 7 | 9MM DSC | |

| Cash Value | Peddler Seal No. | SEC/NARCO Envelope No. |
|---|---|---|
| .00 | | |

| Test Requested | Specific Reason |
|---|---|
| 06. Ballistics - microscopic comparison to a known test... | UNKNOWN PERP SHOT C/V |
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

| PLASTIC BAG | | | No |
|---|---|---|---|
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
| **Item Processed In Field**<br>No | **Process Type** | **If Other** | |
| **Received From**<br>CSU RECOVERED | | | |
| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>5 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
| **Property Clerk Invoice Qty**<br>5 | **Property Clerk Description**<br>FRAGMENTS | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** |
| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | | **Specific Reason**<br>UNKNOWN PERP SHOT C/V | |
| **Comparison Property Clerk Invoice No.** | | **Comparison Property Clerk Item No.** | |

| Evidence | | | |
|---|---|---|---|
| **Unique ID No.**<br>J13-14,16,18,21 | **Item Type**<br>FIREARMS | **Probative Value**<br>PROBATIVE | **Caliber**<br>UNKNOWN |
| **Unique Item Number**<br>J14 | **Item Description**<br>BULLET FRAGMENT COPPER JACKETING | | |
| **Specific Locations + Measurements**<br>RECOVERED ON 5TH STEP F/O 409 - 411 E 146 ST ~E OF W CURB OF WILLIS AVE 167' 3" ~N OF N SIDEWALK 13' 3" | | | |
| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
| **Item Processed In Field**<br>No | **Process Type** | **If Other** | |
| **Received From**<br>CSU RECOVERED | | | |
| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>5 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
| **Property Clerk Invoice Qty**<br>5 | **Property Clerk Description**<br>FRAGMENTS | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** |
| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | | **Specific Reason**<br>UNKNOWN PERP SHOT C/V | |
| **Comparison Property Clerk Invoice No.** | | **Comparison Property Clerk Item No.** | |

| Evidence | | | |
|---|---|---|---|
| **Unique ID No.**<br>J13-14,16,18,21 | **Item Type**<br>FIREARMS | **Probative Value**<br>PROBATIVE | **Caliber**<br>UNKNOWN |
| **Unique Item Number**<br>J16 | **Item Description**<br>LEAD FRAGMENT | | |
| **Specific Locations + Measurements**<br>RECOVERED ON SIDEWALK F/O 409 - 411 E 146 ST ~E OF W CURB OF WILLIS AVE 178' 9" ~N OF N SIDEWALK 7' 6" | | | |
| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
| **Item Processed In Field** | **Process Type** | **If Other** | |

| No | |
|---|---|

**Received From**
CSU RECOVERED

| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>5 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
|---|---|---|---|

| **Property Clerk Invoice Qty**<br>5 | **Property Clerk Description**<br>FRAGMENTS | | |
|---|---|---|---|

| **Cash Value**<br>.00 | **Peddler Seal No.** | **SEC/NARCO Envelope No.** |
|---|---|---|

| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | **Specific Reason**<br>UNKNOWN PERP SHOT C/V |
|---|---|

| **Comparison Property Clerk Invoice No.** | **Comparison Property Clerk Item No.** |
|---|---|

**Evidence**

| **Unique ID No.**<br>J13-14,16,18,21 | **Item Type**<br>FIREARMS | | **Probative Value**<br>PROBATIVE | **Caliber**<br>UNKNOWN |
|---|---|---|---|---|

| **Unique Item Number**<br>J18 | **Item Description**<br>BULLET FRAGMENT COPPER JACKETING | | | |
|---|---|---|---|---|

**Specific Locations + Measurements**
RECOVERED INSIDE OF FENCE AREA ~F/O 409 - 411 E 146 ST ~E OF W CURB OF WILLIS AVE 192' 5" ~N OF N SIDEWALK 10' 2"

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
|---|---|---|---|

| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
|---|---|---|---|

| **Item Processed In Field**<br>No | **Process Type** | **If Other** | |
|---|---|---|---|

**Received From**
CSU RECOVERED

| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>5 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
|---|---|---|---|

| **Property Clerk Invoice Qty**<br>5 | **Property Clerk Description**<br>FRAGMENTS | | |
|---|---|---|---|

| **Cash Value**<br>.00 | **Peddler Seal No.** | **SEC/NARCO Envelope No.** |
|---|---|---|

| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | **Specific Reason**<br>UNKNOWN PERP SHOT C/V |
|---|---|

| **Comparison Property Clerk Invoice No.** | **Comparison Property Clerk Item No.** |
|---|---|

**Evidence**

| **Unique ID No.**<br>J13-14,16,18,21 | **Item Type**<br>FIREARMS | | **Probative Value**<br>PROBATIVE | **Caliber**<br>UNKNOWN |
|---|---|---|---|---|

| **Unique Item Number**<br>J21 | **Item Description**<br>BULLET FRAGMENT COPPER JACKETING | | | |
|---|---|---|---|---|

**Specific Locations + Measurements**
RECOVERED F/O 417 E 146 ST ~E OF W CURB OF WILLIS AVE 257' 11" ~S OF N CURB 9' 3"

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No |
|---|---|---|---|

| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** |
|---|---|---|---|

| **Item Processed In Field**<br>No | **Process Type** | **If Other** | |
|---|---|---|---|

**Received From**
CSU RECOVERED

| **Property Clerk Invoice No.** | **CSU Voucher Name** | **Property Clerk Item No.** | **Property Clerk Invoice Type** |
|---|---|---|---|

**Evidence**

| Unique ID No.<br>J17, J22 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>UNKNOWN |
|---|---|---|---|---|
| Unique Item Number<br>J17 | Item Description<br>DEFORMED BULLET | | | |

| Specific Locations + Measurements |
|---|
| RECOVERED INSIDE FENCE AREA 409 - 411 ~E OF W CURB OF WILLIS AVE 183' 6" ~S OF N CURB 14' 7" |

| Packaged In<br>PLASTIC BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |

| Item Processed In Field<br>No | Process Type | If Other | |
|---|---|---|---|

| Received From<br>CSU RECOVERED |
|---|

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>3 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>2 | Property Clerk Description<br>DEFORMED BULLET | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT C/V |
|---|---|
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

**Evidence**

| Unique ID No.<br>J17, J22 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>UNKNOWN |
|---|---|---|---|---|
| Unique Item Number<br>J22 | Item Description<br>DEFORMED BULLET COPPER JACKETED | | | |

| Specific Locations + Measurements |
|---|
| RECOVERED INSIDE OF NISSAN ALTIMA TRUNK 2007 NY ~PL # DYA 4471 ~E OF W CURB OF WILLIS AVE 648' 3" ~S OF N CURB 9' 3" |

| Packaged In<br>PLASTIC BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |

| Item Processed In Field<br>No | Process Type | If Other | |
|---|---|---|---|

| Received From<br>CSU RECOVERED |
|---|

| Property Clerk Invoice No.<br>R068328 | CSU Voucher Name<br>R068328 | Property Clerk Item No.<br>3 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>2 | Property Clerk Description<br>DEFORMED BULLET | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | Specific Reason<br>UNKNOWN PERP SHOT C/V |
|---|---|
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

**Evidence**

| Unique ID No.<br>J19 THRU J20 | Item Type<br>FIREARMS | | Probative Value<br>PROBATIVE | Caliber<br>UNKNOWN |
|---|---|---|---|---|
| Unique Item Number | Item Description | | | |

| J19 | | DISCHARGED SHELL BRASS CASING ~C WITH NO PRIMER | | |
|---|---|---|---|---|

| **Specific Locations + Measurements** | | | | |
|---|---|---|---|---|
| RECOVERED INSIDE FENCE AREA 413-415 ~E OF W CURB OF WILLIS AVE 240'6" ~N OF N SIDEWALK 11' 7' | | | | |

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No | |
|---|---|---|---|---|
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** | |
| **Item Processed In Field**<br>Yes | **Process Type**<br>Applied Powder for Prints, | **If Other** | | |

| **Received From**<br>CSU RECOVERED | | | |
|---|---|---|---|
| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>4 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
| **Property Clerk Invoice Qty**<br>2 | **Property Clerk Description**<br>UNKNOWN DSC | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** |
| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | | **Specific Reason**<br>UNKNOWN PERP SHOT C/V | |
| **Comparison Property Clerk Invoice No.** | | **Comparison Property Clerk Item No.** | |

| **Evidence** | | | | |
|---|---|---|---|---|
| **Unique ID No.**<br>J19 THRU J20 | **Item Type**<br>FIREARMS | | **Probative Value**<br>PROBATIVE | **Caliber**<br>UNKNOWN |
| **Unique Item Number**<br>J20 | **Item Description**<br>DISCHARGED SHELL BRASS CASING ~C WITH NO PRIMER | | | |

| **Specific Locations + Measurements** | | | | |
|---|---|---|---|---|
| RECOVERED INSIDE FENCE AREA 413-415 ~E OF W CURB OF WILLIS AVE 245'5" ~N OF N SIDEWALK 10' 10" | | | | |

| **Packaged In**<br>PLASTIC BAG | **If Other** | | **Finger Prints Recovered**<br>No | |
|---|---|---|---|---|
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** | |
| **Item Processed In Field**<br>Yes | **Process Type**<br>Applied Powder for Prints, | **If Other** | | |

| **Received From**<br>CSU RECOVERED | | | |
|---|---|---|---|
| **Property Clerk Invoice No.**<br>R068328 | **CSU Voucher Name**<br>R068328 | **Property Clerk Item No.**<br>4 | **Property Clerk Invoice Type**<br>INVESTIGATORY |
| **Property Clerk Invoice Qty**<br>2 | **Property Clerk Description**<br>UNKNOWN DSC | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** |
| **Test Requested**<br>06. Ballistics - microscopic comparison to a known test... | | **Specific Reason**<br>UNKNOWN PERP SHOT C/V | |
| **Comparison Property Clerk Invoice No.** | | **Comparison Property Clerk Item No.** | |

| **Evidence** | | | | |
|---|---|---|---|---|
| **Unique ID No.**<br>J13-14,16,18,21 | **Item Type**<br>FIREARMS | | **Probative Value**<br>PROBATIVE | **Caliber**<br>UNKNOWN |
| **Unique Item Number**<br>J13 | **Item Description**<br>BULLET FRAGMENT COPPER JACKETING | | | |

| **Specific Locations + Measurements** | | | |
|---|---|---|---|
| RECOVERED ON 4TH STEP F/O 409 - 411 E 146 ST ~E OF W CURB OF WILLIS AVE 166' 4" ~N OF N SIDEWALK 12' 11" | | | |

| **Packaged In** | **If Other** | | **Finger Prints Recovered** |
|---|---|---|---|

| R068328 | R068328 | 5 | INVESTIGATORY |
|---|---|---|---|

| Property Clerk Invoice Qty<br>5 | Property Clerk Description<br>FRAGMENTS | | |
|---|---|---|---|
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |
| Test Requested<br>06. Ballistics - microscopic comparison to a known test... | | Specific Reason<br>UNKNOWN PERP SHOT C/V | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | |

**Evidence**

| Unique ID No.<br>J23 | Item Type<br>DNA | | Probative Value<br>PROBATIVE | Caliber |
|---|---|---|---|---|
| Unique Item Number<br>J23 | Item Description<br>YELLOW METAL EARRING WITH BENT POST AND WHITE STONES | | | |

| Specific Locations + Measurements<br>F/O 445 E 146 ST SIDEWALK ~E OF W CURB OF WILLIS AVE 529' 10" ~N OF N CURB 10' |
|---|

| Packaged In<br>ENVELOPE | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |
| Item Processed In Field<br>No | Process Type | If Other | |

| Received From<br>CSU RECOVERED |
|---|

| Property Clerk Invoice No.<br>R068326 | CSU Voucher Name<br>R068326 | Property Clerk Item No.<br>1 | Property Clerk Invoice Type<br>DNA EVIDENCE |
|---|---|---|---|
| Property Clerk Invoice Qty<br>1 | Property Clerk Description<br>YELLOW METAL EARRING | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |
| Test Requested<br>07. DNA - Analysis to identify the source of the biologi... | | Specific Reason<br>POSSIBLY PERP EARRING | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | |

**Evidence**

| Unique ID No.<br>J24 - J25 | Item Type<br>OTHER | | Probative Value<br>PROBATIVE | Caliber |
|---|---|---|---|---|
| Unique Item Number<br>J24 | Item Description<br>ST. IDES MALT LIQUOR 22 OZ BROKEN BOTTLE IN PAPER BAG | | | |

| Specific Locations + Measurements<br>RECOVERED IN STREET 146 ST ~E OF W CURB OF WILLIS AVE 94' ~S OF N CURB 1' 5" |
|---|

| Packaged In<br>PAPER BAG | If Other | | Finger Prints Recovered<br>No |
|---|---|---|---|
| Type of Bio Evid | If Other | | Bio Bag No. |
| Item Processed In Field<br>No | Process Type | If Other | |

| Received From<br>CSU RECOVERED |
|---|

| Property Clerk Invoice No.<br>R068327 | CSU Voucher Name<br>R068327 | Property Clerk Item No.<br>1 | Property Clerk Invoice Type<br>INVESTIGATORY |
|---|---|---|---|
| Property Clerk Invoice Qty<br>2 | Property Clerk Description<br>BOTTLE IN PAPER BAG | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested | | | Specific Reason | |
|---|---|---|---|---|
| Comparison Property Clerk Invoice No. | | | Comparison Property Clerk Item No. | |

| Evidence | | | | |
|---|---|---|---|---|
| **Unique ID No.**<br>J24 - J25 | **Item Type**<br>OTHER | | **Probative Value**<br>PROBATIVE | **Caliber** |
| **Unique Item Number**<br>J25 | **Item Description**<br>ST. IDES MALT LIQUOR 22 OZ BOTTLE IN PAPER BAG | | | |
| **Specific Locations + Measurements**<br>RECOVERED ON C/O WILLIS AVE AND 146 ST IN STREET ~E OF W CURB OF WILLIS AVE 17' 3" ~S OF N CURB 2' 3" | | | | |
| **Packaged In**<br>PAPER BAG | **If Other** | | **Finger Prints Recovered**<br>No | |
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** | |
| **Item Processed In Field**<br>No | **Process Type** | **If Other** | | |
| **Received From**<br>CSU RECOVERED | | | | |
| **Property Clerk Invoice No.**<br>R068327 | **CSU Voucher Name**<br>R068327 | **Property Clerk Item No.**<br>1 | **Property Clerk Invoice Type**<br>INVESTIGATORY | |
| **Property Clerk Invoice Qty**<br>2 | **Property Clerk Description**<br>BOTTLE IN PAPER BAG | | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** | |
| **Test Requested** | | | **Specific Reason** | |
| **Comparison Property Clerk Invoice No.** | | | **Comparison Property Clerk Item No.** | |

| Evidence | | | | |
|---|---|---|---|---|
| **Unique ID No.**<br>J26 | **Item Type**<br>OTHER | | **Probative Value**<br>PROBATIVE | **Caliber** |
| **Unique Item Number**<br>J26 | **Item Description**<br>RED BANDANA | | | |
| **Specific Locations + Measurements**<br>RECOVERED IN REAR YARD OF 445 E 146 ST IN FRONT OF 3RD BENCH RIGHT OF | | | | |
| **Packaged In**<br>PAPER BAG | **If Other** | | **Finger Prints Recovered**<br>No | |
| **Type of Bio Evid** | **If Other** | | **Bio Bag No.** | |
| **Item Processed In Field**<br>No | **Process Type** | **If Other** | | |
| **Received From**<br>CSU RECOVERED | | | | |
| **Property Clerk Invoice No.**<br>R068329 | **CSU Voucher Name**<br>R068329 | **Property Clerk Item No.**<br>1 | **Property Clerk Invoice Type**<br>INVESTIGATORY | |
| **Property Clerk Invoice Qty**<br>1 | **Property Clerk Description**<br>RED BANDANA | | | |
| **Cash Value**<br>.00 | **Peddler Seal No.** | | **SEC/NARCO Envelope No.** | |
| **Test Requested** | | | **Specific Reason** | |
| **Comparison Property Clerk Invoice No.** | | | **Comparison Property Clerk Item No.** | |

| Reporting Officer: | Rank<br>DT3 | Name<br>GLENN JACKLITSCH | Tax Reg. No.<br>899384 | Command<br>568-CRIME SCENE UNIT |
|---|---|---|---|---|

| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
|---|---|---|---|---|---|
| | - | 20091016 | . | DONALD BURTON | 880701 |



**CRIME SCENE UNIT**
Person Report

| Case Number | UF61 Number | Report Date | Activity Date | Activity Time | Topic |
|---|---|---|---|---|---|
| 2009-6944 | 2009-040-10852 | 09/23/2009 | 09/22/2009 | 17:20 | HOMICIDE |

 

**CRIME SCENE UNIT**
**Ballistic Damage**

| Case Number | UF61 Number | Report Date | Activity Date | Activity Time | Topic |
|---|---|---|---|---|---|
| 2009-6944 | 2009-040-10852 | 10/15/2009 | 09/22/2009 | 17:20 | BALLISTIC DAMAGE AT SCENE |

## Ballistic Damage Paths

| Bullet Path Number (if applicable) | Damage Type | Damage No. |
|---|---|---|
| | BALLISTIC IMPACT MARK | 0 |

**Physical Description and Location**
BIM on building left of right window 1st floor f/o 445 E146 Street

**Measurements**
F/o 445 East 146 Street

**CSU Notes**

| Projectile Travelling | Azimuth of Angle Projectile Traveling Relative to Surface: | Right Toward Left | Left Toward Right | Angel from Horizontal Plane |
|---|---|---|---|---|
| | 0 deg. | 0 deg. | 0 deg. | 0 deg. |

| Trajectory Analysis | Projectile Responsible for Damage Recovered |
|---|---|
| Unknown | No |

| Presumptive Testing Conducted | Type of Test | If Other |
|---|---|---|
| No | | |

**Test Results**

| Substrate Forwarded to Lab | Substrate Item No. |
|---|---|
| No | Voucher No: Item No: 0 Item Description:BLACK CELLPHONE |

**Subsequent damage along this bullet path**
Yes

---

## Ballistic Damage Paths

| Bullet Path Number (if applicable) | Damage Type | Damage No. |
|---|---|---|
| | BULLET HOLE | 0 |

**Physical Description and Location**
Bullet hole in rear bumber of auto

**Measurements**
rear bumber right of below tail light from NY PL # DYA4471 ~2007 Nissan

**CSU Notes**

| Projectile Travelling | Azimuth of Angle Projectile Traveling Relative to Surface: | Right Toward Left | Left Toward Right | Angel from Horizontal Plane |
|---|---|---|---|---|
| | 0 deg. | 0 deg. | 0 deg. | 0 deg. |

| Trajectory Analysis | Projectile Responsible for Damage Recovered |
|---|---|
| Unknown | Yes |

**Evidence Item No.**
Voucher No:R068328 Item No: 3 Item Description:DEFORMED BULLET

| Presumptive Testing Conducted | Type of Test | If Other |
|---|---|---|
| No | | |

**Test Results**

| Substrate Forwarded to Lab | Substrate Item No. |
|---|---|
| No | Voucher No: Item No: 0 Item Description:BLACK CELLPHONE |

**Subsequent damage along this bullet path**

Yes

| Reporting Officer: | Rank<br>DT3 | Name<br>GLENN JACKLITSCH | | Tax Reg. No.<br>899384 | Command<br>568-CRIME SCENE<br>UNIT |
|---|---|---|---|---|---|
| Reviewing<br>Supervisor: | Manner of<br>Closing<br>- | Date<br>Reviewed<br>20091016 | Date of Next<br>Review<br>. | Name<br>DONALD<br>BURTON | Supv. Tax No.<br>880701 |

## PERSON INFORMATION

| Role | Last Name | First Name | Middle Initial |
|---|---|---|---|
| COMPLAINANT/VICTIM | SANTIAGO | AISHA | |

| Sex | Race | DOB | Age | Photographed |
|---|---|---|---|---|
| FEMALE | WHITE HISPANIC | 03/23/1984 | 25 | YES |

| On Scene | Removed to Hospital | Hospital Name | Legitimate Access |
|---|---|---|---|
| YES | NO | | YES |

| Arrest Number | Arrest Precinct | NYSID |
|---|---|---|
| | | |

## PERSON ADDRESS INFORMATION

| Building Number | Street | City | State | Zip Code | Apt Num |
|---|---|---|---|---|---|
| 445 | EAST 146 STREET | BRONX | NY | | |

## PERSON CONDITION INFORMATION

| Bleeding | Injured/Deceased | ME/MLI Name | ME/MLI Emp No. | ME/MLI Case No. |
|---|---|---|---|---|
| YES | DECEASED | DEVITO | | |

## FORENSIC INFORMATION

| Contact with Perp/Suspect | Fingerprint Elimination | DNA Eliminations | If No DNA Elimination Why |
|---|---|---|---|
| NONE | NO | NO | DECEASED |

## CLOTHING DESCRIPTION

blue jeans, black belt, white tee shirt, white undershirt, multi colored bra, white socks, white sneakers

## ADDITIONAL INFORMATION

n/a

## TYPE OF INJURY

Gunshot wound to chest with entry and exit through back

| Reporting Officer: | Rank | Name | | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| | DT3 | GLENN JACKLITSCH | | 899384 | 568-CRIME SCENE UNIT |
| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
| | - | 20091016 | . | DONALD BURTON | 880701 |

## PERSON INFORMATION

| Role | Last Name | | First Name | Middle Initial |
|---|---|---|---|---|
| COMPLAINANT/VICTIM | GUZMAN | | ANTHONY | P |

| Sex | Race | DOB | Age | Photographed |
|---|---|---|---|---|
| MALE | WHITE HISPANIC | 01/16/1984 | 25 | NO |

| On Scene | Removed to Hospital | Hospital Name | Legitimate Access |
|---|---|---|---|
| NO | YES | LINCOLN | YES |

| Arrest Number | Arrest Precinct | NYSID |
|---|---|---|
| | | |

## PERSON ADDRESS INFORMATION

| Building Number | Street | City | State | Zip Code | Apt Num |
|---|---|---|---|---|---|
| 370 | MORRIS AVE | | NY | | 3C |

## PERSON CONDITION INFORMATION

| Bleeding | Injured/Deceased | ME/MLI Name | ME/MLI Emp No. | ME/MLI Case No. |
|---|---|---|---|---|
| YES | INJURED | | | |

## FORENSIC INFORMATION

| Contact with Perp/Suspect | Fingerprint Elimination | DNA Eliminations | If No DNA Elimination Why |
|---|---|---|---|
| UNKNOWN | NO | NO | HOSPITAL |

## CLOTHING DESCRIPTION

n/a

## ADDITIONAL INFORMATION

n/a

## TYPE OF INJURY

gunshot wound left leg

| Reporting Officer: | Rank | Name | | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| | DT3 | GLENN JACKLITSCH | | 899384 | 568-CRIME SCENE UNIT |
| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
| | - | 20091016 | . | DONALD BURTON | 880701 |

 

**CRIME SCENE UNIT**
**Scene Report**

| Case Number 2009-6944 | UF61 Number 2009-040-10852 | Report Date 09/23/2009 | Activity Date 09/23/2009 | Activity Time 17:20 | Topic HOMICIDE / 1 F/A |
|---|---|---|---|---|---|

| Premise Type RESIDENCE - PUBLIC HOUSING | Number of Photos 61 | Is additional crime scene processing anticipated in regards to this investigation? NO | | If YES, Explain |
|---|---|---|---|---|

## CONDITIONS

| Temperature 70 Fahrenheit | Weather CLEAR | Location OUTDOOR | Lighting DAYLIGHT |
|---|---|---|---|

## JOB TIMES

| Depart CSU Office/other to the Crime Scene 09/22/2009 16:45 | Arrival at the Crime Scene 09/22/2009 17:20 | Time Depart Crime Scene 09/22/2009 02:30 | Initial Assignment Completed 09/23/2009 07:45 |
|---|---|---|---|

## NYPD PERSONNEL

| NYPD Role | NYPD MOS | Conferred With (Yes/No) | On Scene (Yes/No) |
|---|---|---|---|
| SAFE GUARDING | 941976,RONALDCAR JUAN,POM,807 | YES | YES |
| INVOICING OFFICER | 941976,RONALDCAR JUAN,POM,807 | YES | YES |
| CASE INVESTIGATOR | 914024,BART SNYDER,DT2,263 | YES | YES |
| RESPONDING INVESTIGATOR | 914024,BART SNYDER,DT2,263 | YES | YES |
| DETECTIVE SUPERVISOR | 882662,MICHAEL LOPUZZO,SDS,263 | YES | YES |

## CRIME SCENE SEARCH

| Search Conducted YES | Search Method LINE SEARCH |
|---|---|

**Search Details**
performed line search recovered evidence

## TOOLS UTILIZED

**Incident Summary (Detail the facts of the case; summarize what occurred)**

Unknown male perps fired numerous shots at each other and 1 female shot in chest DOA at scene and 1 male shot in left leg NLTD removed to Lincoln

**Investigative Process (Summarize the steps taken to document and process the scene)**

Services performed photographs , sketch, measurements, packaging evidence , process DSC for latents with negative results, process black BMW PL # epb7138 rear and side of auto for latent prints with negative results.

**Evidence Summary (Summarize the evidence and explain its probative value to the case. Include info that may assist an examiner to further the investigation)**

Recovered ballistics from crime scene forward to firearms analysis for ballistic testing. ~Recovered earring front of 445 East 146 St forward to OCME / DNA analysis

| Reporting Officer: | Rank<br>DT3 | Name<br>GLENN JACKLITSCH | | Tax Reg. No.<br>899384 | Command<br>568-CRIME SCENE UNIT |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing<br>- | Date Reviewed<br>20091016 | Date of Next Review<br>. | Name<br>DONALD BURTON | Supv. Tax No.<br>880701 |



**CRIME SCENE UNIT**
Person Report

| Case Number | UF61 Number | Report Date | Activity Date | Activity Time | Topic |
|---|---|---|---|---|---|
| 2009-6944 | 2009-040-10852 | 09/23/2009 | 09/22/2009 | 17:20 | F/A |



**CRIME SCENE UNIT**
Evidence List

| Case Number | UF61 Number | Report Date | Activity Date | Activity Time | Topic |
|---|---|---|---|---|---|
| 2009-6944 | 2009-040-10852 | 09/23/2009 | 09/23/2009 | 04:15 | BALLISTICS |

 

**CRIME SCENE UNIT**
**CSU Rough Sketch**

| Case Number 2009-6944 | UF61 Number 2009-040-10852 | Report Date 10/09/2009 | Activity Date 09/22/2009 | Activity Time 17:20 | Topic ROUGH NOTES/ SKETCH |
|---|---|---|---|---|---|

**CSU ROUGH SKETCH INFORMATION**

| Title | Location 445 E 146 St |
|---|---|

**Attachment**
📎 1255108589034_0000002983.pdf

| Reporting Officer: | Rank DT3 | Name GLENN JACKLITSCH | | Tax Reg. No. 899384 | Command 568-CRIME SCENE UNIT |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 20091016 | Date of Next Review . | Name DONALD BURTON | Supv. Tax No. 880701 |

 

**CRIME SCENE UNIT**
**CSU Scene Diagram**

| Case Number | UF61 Number | Report Date | Activity Date | Activity Time | Topic |
|---|---|---|---|---|---|
| 2009-6944 | 2009-040-10852 | 09/23/2009 | 09/23/2009 | 17:20 | SKETCH |

**CSU SCENE DIAGRAM INFORMATION**

| Title | Location |
|---|---|
| | 445 East 146 St |

**Attachment**
1255107461403_09-6944.pdf
**PDF**

| Reporting Officer: | Rank | Name | | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| | DT3 | GLENN JACKLITSCH | | 899384 | 568-CRIME SCENE UNIT |

| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
|---|---|---|---|---|---|
| | - | 20091016 | . | DONALD BURTON | 880701 |

 

**CRIME SCENE UNIT**
**Latent Print Processing Report (INIT)**

| Case Number 2009-6944 | UF61 Number 2009-040-10852 | Report Date 09/23/2009 | Activity Date 09/23/2009 | Activity Time 17:20 | Topic DUSTED DSC AND AUTO |
|---|---|---|---|---|---|

| Pertinent Information (include areas processed and techniques utilized) |
|---|
| All Pertinent and condusive area and items were processed with conventional latent print powders with negative results |

| Reporting Officer: | Rank DT3 | Name GLENN JACKLITSCH | | Tax Reg. No. 899384 | Command 568-CRIME SCENE UNIT |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 20091016 | Date of Next Review . | Name DONALD BURTON | Supv. Tax No. 880701 |

JA2-68

 

**CRIME SCENE UNIT**
**CSU Closing Report**

| Case Number | UF61 Number | Report Date | Activity Date | Activity Time | Topic |
|---|---|---|---|---|---|
| 2009-6944 | 2009-040-10852 | 10/09/2009 | 09/22/2009 | 17:20 | CSU CLOSING |

**Follow-up Information**
1. On 09/22/09, at approximately 1720 hrs the above crime scene services were rendered.

| Checklist Item | Description | Completed | Comments |
|---|---|---|---|
| | | | |

| Reporting Officer: | Rank | Name | Tax Reg. No. | Command |
|---|---|---|---|---|
| | DT3 | GLENN JACKLITSCH | 899384 | 568-CRIME SCENE UNIT |

| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
|---|---|---|---|---|---|
| | E - | 20091016 | . | DONALD BURTON | 880701 |



NYPD CRIME SCENE UNIT
Homicide / F/A   9/22/09
CSU RUN # 6944    40 PCT.
Loc.: 445  E 146 Street Bronx NY
Prepared by: Det. P. Brown # 4095
***Diagram is NotTo Scale; Illustration Use Only***





LEGEND:
BIM1 ....................... BULLET IMPACT MARK
J1 THRU.J6 .............. WIN.45  AUTO D/S/CASINGS
J7 THRU.J12 & J15 ..... 9MM LUGER WIN  D/S/CASING
J16 ........................ LEAD FRAGMENT
J17 ........................ DEFORMED BULLET
J18 ........................ BULLET FRAGMENT
J19 & J20 ................. DISCHARGED SHELL CASINGS WITH NO PRIMER
J21 ........................ BULLET FRAGMENT COPPER JACKETING
J22 ........................ DEFORMED BULLET COPPER JACKETED
J23 ........................ YELLOW METAL EARRING WITH
                           BENT POST AND WHITE STONES
J24 ........................ ST. IDES MALT LIQUOR 22 OZ. BROKEN
                           BOTTLE IN PAPER BAG
J25 ........................ ST. IDES MALT LIQUOR 22 OZ. IN PAPER BAG

Case 22-1835, Document 32, 11/21/2022, 3423265, Page72 of 73



PEOPLE'S
EXHIBIT
58A



NOT TO SCALE
For Illustration Purposes Only

CSU RUN # 09/6944
Crime : Homicide , F/A
40 Pct
Location : 445 E 146 Street
Date : 09/22/09
Det. Jacklitsch # 482

