# 22-1835

# United States Court of Appeals for the Second Circuit

JOSEPH DIAZ,

*Petitioner-Appellant*,

v.

MARK MILLER, SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT

## REPLY BRIEF FOR PETITIONER-APPELLANT

| | |
|---|---|
| Mark W. Zeno | Katharine Skolnick |
| Center for Appellate Litigation | (NY Bar #4760914) |
| *Counsel for Petitioner-Appellant* | kskolnick@cfal.org |
| 120 Wall Street, 28th Floor | *Of Counsel* |
| New York, NY 10005 | 212-577-2523 (ext. 501) |
| 212-577-2523 | |
| March 7, 2023 | |

# TABLE OF CONTENTS

*TABLE OF AUTHORITIES* ............................................................................... *ii*
*INTRODUCTION* ........................................................................................... *1*
*REPLY ARGUMENT* ..................................................................................... *1*
*POINT I: The Law Is Settled that Introducing Several Police-Created Documents Against Mr. Diaz at Trial Violated his Right to Confrontation (replying to RB, Point I).* ........................................................................... *1*
*POINT II: The District Court Erred in Deferring to the State Court's Harmless Error Determination (replying to RB, Point II).* .................................. *7*
*CONCLUSION* ............................................................................................... *9*
*CERTIFICATE OF COMPLIANCE* ............................................................. *10*

# TABLE OF AUTHORITIES

**Cases**

*Bullcoming v. New Mexico*, 564 U.S. 647, 664-65 (2011) ................................................. 2, 5

*Crawford v. Washington*, 541 U.S. 36, 52 (2004) ........................................................ 2, 4, 6

*Davis v. Washington*, 547 U.S. 813, 822 (2006) ................................................................... 1

*Garlick v. Lee*, 1 F.4th 122, 125 (2d Cir. 2021) ............................................................passim

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2011) ........................................ 1, 2, 5

*People v. Diaz*, 151 A.D.3d 502 (N.Y. App. Div. 2017), *lv. denied* 9 N.Y.3d 1126 (N.Y. Ct. App. 2017) ................................................................................................................ 2, 3

*People v. Freycinet*, 11 N.Y.3d 38 (N.Y. Ct. App. 2008), ................................................. 3, 6

*People v. Fuller*, 210 A.D.3d 597, 599 (N.Y. App. Div. 2022) ............................................. 6

*People v. Garlick*, 144 A.D.3d 605 (N.Y. App. Div. 2016) ................................................ 3, 4

*People v. John*, 27 N.Y.3d 294 (N.Y. Ct. App. 2016) ......................................................... 3, 6

*Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) ..................................................... 4

*White v. Woodall*, 572 U.S. 415, 427 (2014) ........................................................................ 4

*Williams v. Illinois*, 567 U.S. 50 (2012) ................................................................................ 3

*Williams v. Taylor*, 529 U.S. 362, 407 (2000) ...................................................................... 4

**Statute**

28 U.S.C. § 2254(d)(1) ............................................................................................................ 4

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JOSEPH DIAZ,

              *Petitioner-Appellant*,
    v.

MARK MILLER,
Superintendent, Green Haven Correctional Facility,

              *Respondent-Appellee.*

## INTRODUCTION

Petitioner-Appellant Joseph Diaz replies to Points I and II raised in Respondent-Appellee's brief ("RB"), filed on February 21, 2023. For the reasons discussed below and in Mr. Diaz's opening brief ("AB"), Respondent's arguments are unavailing.

## REPLY ARGUMENT

### POINT I

**The Law Is Settled that Introducing Several Police-Created Documents Against Mr. Diaz at Trial Violated his Right to Confrontation (replying to RB, Point I).**

The Supreme Court has resoundingly held that statements whose primary purpose is to prove a fact at a criminal trial are "testimonial" and thus subject to the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 822 (2006). No "known suspect" is required for the statement or document to be testimonial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2011) (finding that "proving one fact necessary for . . . conviction"—there, that the substance was cocaine—was all that was required to

1

render evidence testimonial). Further, it has held that where there are "formalities attending" the creation of the documents, statements therein are testimonial, *see Bullcoming v. New Mexico*, 564 U.S. 647, 664-65 (2011), and where statements are "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," they are subject to confrontation. *Melendez-Diaz*, 557 U.S. at 311 (citing *Crawford v. Washington*, 541 U.S. 36, 52 (2004)).

Yet, in rehashing arguments that this Court has already soundly rejected in *Garlick v. Lee*, Respondent urges it to overrule its own clear precedent, which has found that New York courts repeatedly misapply clearly established Supreme Court precedent by requiring a "known suspect" for Confrontation Clause rights to attach. *See* 1 F.4th 122, 125 (2d Cir. 2021). This Court cannot and should not accept that invitation.

In *Garlick*, the Second Circuit said in no uncertain terms that the Appellate Division had erred in finding an autopsy report nontestimonial because it "did not link the commission of the crime to Garlick." 1 F.4th at 125. Identical reasoning supported the Appellate Division's conclusion in Mr. Diaz's case, where that court found that the police-created diagrams and report were nontestimonial because they did not link Mr. Diaz to the crime. In both cases, the Appellate Division did not even consider whether the "primary purpose" of the crime scene diagram and reports was to prove past events potentially relevant to later prosecution. *People v. Diaz*, 151 A.D.3d 502 (N.Y. App. Div. 2017), *lv. denied* 9 N.Y.3d 1126 (N.Y. Ct. App. 2017); *People v. Garlick*, 144 A.D.3d 605

2

(N.Y. App. Div. 2016). This Court soundly rejected the validity of the cases—such as *People v. Freycinet*, 11 N.Y.3d 38 (N.Y. Ct. App. 2008), and *People v. John*, 27 N.Y.3d 294 (N.Y. Ct. App. 2016)—on which the Appellate Division, in both *Garlick* and *Diaz*, had relied.

This Court also examined the Supreme Court's decision in *Williams v. Illinois*, 567 U.S. 50 (2012), finding it did nothing to alter the clearly established rules of the cases predating it, while finding in the alternative that, under either the plurality opinion or the concurrence by Justice Thomas, the conclusion that the autopsy report there was testimonial would be the same. *Garlick*, 1 F.4th at 133 n.4, 135 n.6. Indeed, nothing in *Williams* altered the basic rule about what constitutes testimonial evidence that is subject to confrontation: that which has an "evidentiary purpose" and is admitted against a defendant, such that Respondent's complaint that this unsettled the law sufficiently to mean that "state courts did not act unreasonably" in deeming that crime scene records were mere business records (RB: 4).

Specifically, as the District Court correctly held, "Like the autopsy report at issue in *Garlick*, the crime scene documents were made 'in aid of an active police investigation,' and were clearly intended for use in a future trial, as they catalogued evidence of a shooting that occurred only two hours earlier, listed the crimes under investigation, and *even indicated that a specific piece of evidence was of probative value*." (JA107 (emphasis added)). Further, the court below noted that "the documents were similarly formalized, *see Garlick*, 1 F.4th at 134, in that they contained a unique identifying

3

number, Jacklitsch's shield number, and, on some pages, an official NYPD seal"—indicia of formality that the Supreme Court has found characteristic of testimonial statements (*id.*). Accordingly, just as in *Garlick*, the police-created documents here—inarguably made in aid of potential prosecution, tending to prove facts against Mr. Diaz, and bearing formalities—were testimonial under the primary-purpose test.

Further, Respondent argues that because the Supreme Court has not ruled on crime scene reports and diagrams specifically, the law as to their testimonial nature is not "clearly established" (*see* RB: 4, 21, 31-32). The *habeas* standard that Respondent proposes is not so narrow as to require identical facts, *see* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 407 (2000), and *Garlick* allows this Court to dispatch with that argument swiftly: prior to that decision, no Supreme Court case on the Confrontation Clause had decided the question as related to autopsy reports either. *See* 1 F.4th at 129-33 (reviewing cases). Yet, this Court was able to apply *Crawford* and its progeny, at the "appropriate level of generality," to hold that state courts' sanctioning their admission was unreasonable. *Id.* at 128 (citing *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017)), 133-35 n.5 ("Garlick need not identify 'an identical factual pattern before a legal rule must be applied.' *White v. Woodall*, 572 U.S. 415, 427 (2014)."). It continued, "[w]hile the Supreme Court has not addressed autopsy reports in particular, the Court has 'plainly rejected the reasoning on which the First Department relied to hold the autopsy report admissible in Garlick's case.'" *Id.* The same is so here.

4

Instead, Respondent attempts to recast highly subjective acts by investigators whose job is to solve crimes and prosecute those who commit them as ministerial and accordingly the documents generated as mere business records (RB: 15, 19, 27-30). This, too, is a rule that cannot stand, and Respondent cannot will it so simply by labeling these documents "business records."[1] As the "probative" denotations on the records indicate, these records were not "created for an administrative reason, such as chain of custody" (RB: 21). They were plainly created with an accusatory purpose in mind, by police witnesses, and with solemnities characteristic of testimonial documents. *See Melendez-Diaz*, 557 U.S. at 310. Moreover, as with forensic reports such as the ones at issue in *Melendez-Diaz* and *Bullcoming*, subjectivity can come into play as a police officer gathers evidence; it is not the mere "rote" exercise Respondent envisions (RB: 29). Moreover, as the Supreme Court has made clear, the Confrontation Clause covers statements tending to prove *any* fact against Mr. Diaz. 557 U.S. at 313. And, contrary to what Respondent claims, the "known-suspect" portion of the Appellate Division's determination cannot be excised here (RB: 27-28), as what the report and diagrams tended to prove was identity: who was standing where during this fast-moving event.

---

[1] In any event, even if the records were somehow admissible as business records under hearsay rules, that does not answer the separate question of whether they are subject to the Confrontation Clause, as such a document may not be admitted without confrontation if "the regularly conducted business activity is the production of evidence for use at trial"—a question Respondent all but ignores. *Melendez-Diaz*, 557 U.S. at 321. Here, where a crime scene detective was gathering evidence at the scene of a shooting to piece together how it happened and by whom, any fact he is asserting is plainly for trial.

5

Nor is it an answer to the District Court's finding that this was a violation of Mr. Diaz's rights to say that "the trial court's ruling here was a faithful application of New York's precedents, which have reasonably applied *Crawford* and its progeny to forensic reports in a variety of contexts" (RB: 25), as the cases Respondent cites in support are precisely those this Court has criticized in *Garlick*. Applying a precedent that itself is infected with error does not exempt the state appellate courts from federal court policing for serious violations of constitutional rights.[2]

Finally, Respondent attempts to excuse the improper admission of the crime scene documents by pointing to the presence of Officer Juan at the trial (RB: 29). For two reasons, Juan was no substitute for Detective Jacklitsch. First, Juan did not personally process the scene, even if he was present (T.230, 245-46). Second, the offending evidence was not admitted through Juan but rather through a surrogate detective (Brown), so Juan's testimony about the scene itself cannot cure the Confrontation Clause violation as to the documents that were admitted without an opportunity for Mr. Diaz to cross their preparer.

---

[2] Also noteworthy is that New York courts *continue* to apply these rules containing known-suspect requirements, even in the wake of *Garlick*. *See People v. Fuller*, 210 A.D.3d 597, 599 (N.Y. App. Div. 2022) (stating, post-*Garlick*, that even though the Confrontation Clause claim as to the admissibility of an autopsy report had not been preserved, the New York "Court of Appeals has adhered to its holdings that autopsy reports are not testimonial," citing the pre-*Garlick* cases of *John* and *Freycinet*, "and the Supreme Court has not held otherwise"). Ongoing federal court intervention is therefore needed to prevent exactly the sorts of errors that *habeas corpus* is intended to remedy.

Accordingly, the Court should not upset the District Court's well-reasoned decision that the Appellate Division unreasonably applied clearly established Supreme Court law in concluding that the police-created documents here were nontestimonial.

## POINT II

**The District Court Erred in Deferring to the State Court's Harmless Error Determination (replying to RB, Point II).**

Respondent offers no explanation of why it was not unreasonable for the Appellate Division, First Department, to conclude the offending documents shed *little* or *no* light on the disputed issues at trial where the prosecution itself had relied heavily on this evidence below. Excise the crime scene diagram and report, and there is nothing to place the shooter at the corner discharging the bullet it theorized struck Santiago. Without the crime scene documents, all that remained was inconclusive medical examiner testimony about what bullet killed Santiago, and eyewitness and ballistics expert testimony that suggested the possibility of other shooters (*see* AB: 31-38 (detailing inconsistencies in testimony used to identify shooter)). Thus, it is no surprise that the crime scene documents featured so prominently in the prosecution's case, from opening, through testimony, through the site visit, through summation; that the evidence played such a starring role makes the Appellate Division's conclusion that the evidence meant almost nothing patently absurd.

Instead, Respondent contends that Officer Juan's testimony was an adequate substitute (RB: 29, 40-41), but this is not so, as Juan testifying did not permit cross-

examination of the officers who were actually processing the scene on their methods. Juan expressly stated that he did not personally recover the evidence (T.246). If anything, Juan's testimony established that the scene was chaotic when he arrived, with people running and crossing through the area of the shooting before the police were able to secure it (T.229, 238-39). Moreover, he was initially focused on the area around Ms. Santiago, not near the corner of Willis and 146th Street, and his memory of what happened was hardly clear, as he repeatedly stated during his testimony that he did not "recall" certain events (T.240-46).

Respondent also contends that the "presence of a deformed .45 caliber bullet . . . . further east" than the victim "established that the man who fired the .45 caliber gun was the killer" (RB: 37). But, this argument ignores that the only evidence placing the bullet there was the diagram that the nontestifying detective developed. Where there was eyewitness evidence saying that a 9mm gun might also have been fired eastward and ballistics expert testimony that there could have been two .45s doing the same, and where there was enough variation in the descriptions by eyewitnesses of the person— or, critically, *persons*, a fact that respondent does not acknowledge the eyewitness testimony supported, especially given alternate descriptions of the person they saw shooting wearing a hat and not, or wearing red versus white (RB: 38)—shooting in that direction, there is simply no way that Jacklitsch's diagram had "marginal significance" (RB: 34). In fact, it had crucial importance to the prosecution's theory by linking the found bullet to what Respondent contends was just one .45-caliber weapon being fired.

8

Accordingly, there is no world in which, under any standard, the crime scene documents made no difference to the outcome here. Thus, Mr. Diaz is entitled to the granting of his writ.

## CONCLUSION

The order below should be reversed, and the writ should issue.

Respectfully submitted,

Mark W. Zeno
Center for Appellate Litigation
*Attorney for Appellee-Petitioner*
120 Wall Street, 28th Floor
New York, New York 10005
(212) 577-2523
mzeno@cfal.org

BY:

_____
Katharine Skolnick
*Of Counsel*
(212) 577-2523 (ext. 501)
kskolnick@cfal.org
March 7, 2023

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of and Local Rule 32.1(a)(4), as it contains 2,128 words, excluding the parts of this document exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

/s/ Katharine Skolnick
_____
Katharine Skolnick
March 7, 2023